## JACKSON v. MORGAN ET AL.

[No. 7,201.   Filed May 9, 1911.   Rehearing denied October 13, 1911.
Transfer denied February 15, 1912.]

1. CONTRACTS. — *Malicious Interference with.* — *Procurement of Breach.*—*Conspiracy.*—*Complaint.*—A complaint alleging that the plaintiff and another had contracted to conduct an insurance business, the plaintiff to receive a certain salary and to share half the profits of the business, that plaintiff loaned to his partner $454.22, which was to be repaid from the first money received, that the accrued and accruing profits' of their business aggregated $3,000, that the defendants, with full knowledge of such contracts and arrangements, and for the purpose of benefiting themselves at the expense of the plaintiff, conspired with plaintiff's partner to deprive plaintiff of the benefits of his contract, that in pursuance of such conspiracy they secured the data of such business and excluded him from his office and from any access to his business, thereby causing him to lose his salary, his profits and his loan, does not state a cause of action.   pp. 377, 385, 387, 390.

2. TORTS.—*Malice.*—Mere malice cannot make a lawful act unlawful.   p. 383.

3. TORTS.—*Wrongful Acts.*—*Complaint.*—A complaint for damages for a wrongful act must be determined by the legality or illegality of the act, and not by the pleader's characterization of such act.   p. 384.

4. CONTRACTS.—*Malicious Interference with.*—Where defendant procures, by the use of threats, intimidation, force, or other unlawful means, the breach of plaintiff's contract, he is liable therefor.   p. 384.

5. CONSPIRACY.—*Want of Overt Acts.*—A conspiracy that has not progressed beyond a state of mind, is not actionable.   p. 386.

6. CONSPIRACY.—*Character of Act Committed.*—*Complaint.*—A complaint alleging that defendants committed a certain act lawful in itself, is not rendered sufficient because it alleges that defendants conspired to do such act.   p. 389.

7. REPLEVIN.—*Damages.*—*Judgment.*—*Res Judicata.*—In an action in replevin all damages for the unlawful taking or detention of the property, up to the time of the trial, must be included in the judgment; and such judgment becomes *res judicata* as to all damages that might have been included therein.   p. 390.

From Superior Court of Marion County (74,105) ; *James M. Leathers*, Judge.

Action by George W. Jackson against Joseph R. Morgan and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Wilson S. Doan, Charles J. Orbison* and *J. C. Mathews,* for appellant.

*Howe & Batchelor,* for appellees.

ADAMS, J.—This action was brought by appellant to recover damages from appellees and from John H. Davidson, for alleged unlawful acts, in causing the breach of a contract between appellant and said Davidson.

The amended complaint is in one paragraph, and substantially alleges that on February 18, 1901, appellant entered into an oral agreement with defendant John 1. H. Davidson, by the terms of which appellant was to assist said Davidson in conducting the state agency of the Northwestern Life Association of Minneapolis, Minnesota, for the State of Indiana; that appellant was to keep the books of said agency, manage the agents for said company in Indiana, and was to receive, as compensation for said services, one-half of the gross profits of said agency; that said agreement was for the term of one year.

It is further alleged that at the time said oral agreement was made, Davidson had a contract with said association, whereby he was to receive as compensation for managing said agency all of the first year's premiums on policies of insurance written by him or his agents in said State, and in addition thereto he was to receive the sum of $100 a month, which was subsequently increased to $200 a month; that, in pursuance of said agreement, appellant entered upon his duties as manager of the agents and bookkeeper for said agency, and continued in such capacity until September 6, 1901, when, without fault on his part, and by reason of the acts hereinafter set out, he was ousted from said agency, and was refused the right to engage in said business as provided by the terms of his contract, and said

contract was broken and canceled; that during the time appellant was so engaged he loaned to said Davidson the sum of $454.22, with the understanding that said sum was to be repaid out of the first money coming to said agency after said loan was made; that the business office of said agency was in the city of Indianapolis, Indiana, in connection with the law offices of appellees Morgan & Morgan; that said appellees knew of the contract between said Davidson and appellant, and knew of the loan made to said Davidson, as aforesaid, and of the agreement with reference to its repayment; that appellees, on or about September 6, 1901, entered into a conspiracy with said Davidson to break the contract existing between appellant and said Davidson, and to oust appellant from any participation in said agency business, or in the profits thereof, and to exclude said plaintiff from the office of said agency and from the possession of all books, papers and collateral held by appellant; that said conspiracy was entered into by said parties for the purpose of injuring appellant, dispossessing him of his rights in said business and sharing in the profits thereof, for the purpose of benefiting said appellees and said Davidson, at the expense of appellant; that, in pursuance of said conspiracy, appellees on September 6, 1901, made an agreement with said Davidson, whereby Davidson was to pretend to owe appellees the sum of $900, and that to secure said debt Davidson was to turn over to said appellees certain collateral securities, containing data essential in the conduct and management of said business, held by the appellant for said agency; that Davidson did not owe appellees, and that said debt was a pretended debt, to give appellees the right to take possession of said securities, and thus deprive appellant of the data with which said business could be conducted; that appellees, acting with the knowledge and consent of Davidson, and in pursuance of said conspiracy, made a demand upon appellant for said securities, on account of said pretended indebtedness; that appellant re-

fused to surrender possession of them, whereupon appelless, with the knowledge and consent of Davidson, and in pursuance of said conspiracy, instituted an action in replevin for the possession of said securities, and that the sheriff of Marion county took them upon a writ of replevin, and turned them over to appellees, who, acting with said Davidson, and with his knowledge and consent, excluded appellant from the office of said agency and from the effects and papers thereof, and from in any manner conducting the business thereof; that, in pursuance of said conspiracy, appellant was precluded from receiving his salary of one-half of the gross profits of said business, and from applying the receipts of said agency business to the payment of said loan; that the accrued profits and those about to accrue from the business of said agency were $3,000, and that by reason of the acts of conspiracy, appellant's share of said profits was extinguished, and he never received anything under and by virtue of his said agreement; that upon the trial of said action in replevin the court awarded the return of said securities to appellant, but at the time of said trial, and at the time of the award of possession of said securities, the life of said contract had been long extinguished, and said securities were of no further use or benefit to him in the conduct of said business. Judgment for $3,000 was demanded.

Appellant dismissed as to Davidson, and appellees filed their joint demurrer to the amended complaint, on the ground that it did not state facts sufficient to constitute a cause of action against them. This demurrer was sustained by the court, and constitutes the only error assigned and relied on for reversal.

Counsel for appellant say that the legal question presented by the error assigned is whether a person, with knowledge of a contract, and with the intention of injuring one of the parties thereto, or securing a pecuniary benefit thereby, who assists or induces the other party to the con-

tract to violate or break it is liable in damages to the injured party.

Appellees deny that an action can be maintained against a third person for inducing or procuring one party to a contract to violate it, to the damage of the other party, except (1) where the relation of master and servant, strictly so called, is involved, and (2) where fraudulent, coercive or other unlawful means have been employed to procure the breach.

The first exception grows out of or is based on the English statute of laborers of 1349 (23 Edw. III, 2 Pick. Stat. at Large 26), which was never in force in this country; and the second is limited to such actions as involve some unlawful means employed, and are comprehended within well-recognized rights of action for tort. Outside of the causes arising from strikes and boycotts, of which there are many in the reports, being based upon another branch of the law of torts, the adjudicated cases involving facts similar to the case at bar are not numerous, and in Indiana the direct question presented is one of first impression; and the cases, both American and English, which may be considered in point, are far from being in harmony.

It was said in the case of *Knickerbocker Ice Co.* v. *Gardiner Dairy Co.* (1908), 107 Md. 556, 69 Atl. 405, 16 L. R. A. (N. S.) 746: "There is great conflict between judges and law writers as to how far there is a remedy for interference with contract relations, and it would be a useless task to undertake to reconcile them. They quite generally agree in their conclusions when the relation of master and servant exists, but even then reach the same point by different routes."

The appellant presses upon our attention the English case of *Lumley* v. *Gye* (1853), 2 El. & Bl. *216. This is a leading case, and has been extensively cited, as well as extensively criticised. Lumley was the lessee of the Queen's theatre, and had a contract with Johanna Wagner to sing

at his theatre and not elsewhere during the period for which she was engaged. Gye, the lessee of Covent Garden theatre, with knowledge of the existing agreement, and during the term thereof, entered into a contract with Miss Wagner to sing at his theatre for a larger sum than that stipulated for in Lumley's agreement. After Lumley had enjoined Miss Wagner from singing elsewhere, he brought an action in three counts against Gye. In the first, he set out his contract, and charged defendant with knowledge thereof, and, with the malicious intention of injuring plaintiff, while the agreement was in force, successfully enticed and procured Miss Wagner to refuse to perform. The second was for enticing and procuring her to refuse to perform after the granting of the injunction. The third alleged that Miss Wagner, for hire, had become plaintiff's dramatic artiste, and that defendant, with knowledge, maliciously enticed and procured her to depart from said employment. The general finding of the majority of the court was that an action would lie for inducing a breach of contract, even though no illegal means were employed to bring about the breach, if it was done for the indirect purpose of injuring the plaintiff, or of benefiting defendant at the expense of plaintiff. The judges, upon the hearing, being divided, their judgments were delivered *seriatim.* It was held, upon different theories, that the action was maintainable, Coleridge, J., alone dissenting. He states the proposition involved as follows: "In order to maintain this action, one of two propositions must be maintained; either that an action will lie against any one by whose persuasions one party to a contract is induced to break it to the damage of the other party, or that the action, for seducing a servant from the master or persuading one who has contracted for service from entering into the employ, is of so wide application as to embrace the case of one in the position and profession of Johanna Wagner." Both propositions were disputed by the learned judge in his dissenting opinion. It will be observed, how-

ever, that by treating the employment of Miss Wagner as a contract for exclusive personal service, the case could be brought within the rule which obtains in cases of master and servant; and some courts have held that the case was decided by extending the principle of the statute of laborers, long after the statute itself had ceased to exist.

In the case of *Bowen* v. *Hall* (1881), 6 Q. B. D. 333, the facts were not unlike the facts in *Lumley* v. *Gye, supra.* The plaintiff was a manufacturer of white-glazed bricks, and had entered into a contract with one Pearson, a valuable and skilled workman, who possessed a secret process for the manufacture of such bricks, and who had engaged himself exclusively to the plaintiff for a period of five years. The defendant was also a manufacturer of white-glazed bricks of an inferior quality, and, with knowledge of the agreement, induced Pearson to abandon his employment with Bowen and enter into the employment of defendant. The case involved the correctness of the first branch of *Lumley* v. *Gye, supra,* whether an action will lie at common law for procuring a breach of a known contract. The opinion of the court was delivered by Brett, L. J. (afterwards Lord Esher), who took occasion to launch the much discussed dictum that "merely to persuade a person to break his contract, may not be wrongful in law or fact, as in the second case put by Coleridge, J. But if the persuasion be used for the indirect purpose of injuring the plaintiff, or of benefiting the defendant at the expense of the plaintiff, it is a malicious act which is in law and in fact a wrong act, and therefore a wrongful act, and therefore an actionable act if injury ensues from it." This dictum was vigorously combatted by Coleridge, Lord Chief Justice (son of Coleridge, J., dissenting in *Lumley* v. *Gye* [1854], 3 El. & Bl. *114), in a dissenting opinion of great force and clearness, in which he not only disagreed with the majority, but reviewed the case of *Lumley* v. *Gye, supra,* and declared that the principle therein announced was not unanimously concurred in

by the textwriters or the profession generally. It will be noted that the case of *Bowen* v. *Hall, supra,* involved facts showing a contract for personal service. Indeed, the opinion states that the contract was one for personal service, though not one which established strictly for all purposes the relation of master and servant, but the case was accurately within the authority of *Lumley* v. *Gye, supra.* An examination of the entire opinion clearly discloses that the dictum of Lord Esher constitutes the ruling principle of the decision, which is, substantially, that while it is not wrongful in law or in fact for one to persuade another to break his contract, yet when such persuasion is accomplished by malice it becomes actionable. "I do not know," said the Lord Chief Justice, in his dissenting opinion in this case, "except in the case of *Lumley* v. *Gye,* that it has ever been held that the same person for doing the same thing, under the same circumstances with the same result is actionable or not actionable according to whether his inward motive was selfish or unselfish for what he did." This is but another way

2.  of expressing the now generally accepted rule that malice in the sense of ill-will or bad motive cannot change a lawful act into an actionable tort, any more than a good motive or kindly intention can justify the invasion of another's rights; that motive cannot constitute, in itself, a cause of action, nor supply the *injuria* which would otherwise be wanting.

While the dictum of Lord Esher has been followed in a number of American cases, it has ceased to be the law of England, having been repudiated by the House of Lords in the cases of *Mogul Steam Ship Co.* v. *McGregor, Gow & Co.,* [1892] A. C. 25, *Mayor, etc.* v. *Pickles,* [1895] A. C. 587, and also in the very able and exhaustive opinions in *Allen* v. *Flood,* [1898] A. C. 1.

In the case of *Mayor, etc.,* v. *Pickles, supra,* the Earl of Halsbury, L. C., speaking of the word "malice," as used by the pleader, said: "If it was a lawful act, however ill the

motive might be, he had a right to do it. If it was an unlawful act, however good his motive might be, he would have no right to do it.'' In the same case, Lord Ashbourne said: ''If his motives were the most generous and philanthropic in the world, they would not avail him when his actions were illegal.'' In such a case motives are immaterial. It is the act and not the motive of the act which much be regarded.

The sufficiency of the complaint, which seeks to recover damages on account of the alleged tortious conduct of another, must be determined upon whether the act complained of is lawful or unlawful, and not upon the characterization of the act by the pleader.

3.

In the case of *Rich* v. *New York, etc., R. Co.* (1882), 87 N. Y. 328, it is said: ''Whatever, or however numerous or formidable, may be the allegations of conspiracy, of malice, of oppression, of vindictive purpose, they are of no avail; they merely heap up epithets.'' Again, in the case of *O'Callaghan* v. *Cronan* (1876), 121 Mass. 114, it was said: ''The allegations of conspiracy, illegality, falsehood and malice will not support this action, unless either the purpose intended, or the means by which it was to be accomplished, is shown to be unlawful.''

But where a contract has been broken by the employment of force, threats, intimidation or other unlawful means, an action is clearly maintainable. In many of the cases cited by appellant—cases which arose out of labor difficulties, and in which complaints were held good, their sufficiency was made to depend upon averments of unlawful conduct. It will not be disputed but that a right of action will arise against a third person in a case where interference with business or contract relations has been brought about through acts of violence, threats or fraud, and where the breach of the contract and damage to business thus induced, was the resultant injury. But where it appears that there were neither threats nor coercion, and where the act complained of was not of itself unlawful, such act

4.

cannot be made unlawful by an allegation that it was prompted by malice, ill-will, or personal enmity. As some of the cases express it, "malicious motives make a bad act worse, but they cannot make that wrong which in its own essence is lawful."

The cases, as we have seen, are in such conflict that it would be quite impossible to reconcile them. It is true that many of the cases cited by appellant in support of

1. the principle contended for by him, while based on facts different from the facts before us, do sustain appellant's contention, at least in the argument, and follow the doctrine laid down in the case of *Bowen* v. *Hall, supra.* These cases include *Knickerbocker Ice Co.* v. *Gardiner Dairy Company, supra; Moran* v. *Dumphy* (1901), 177 Mass. 485, 59 N. E. 125, 52 L. R. A. 115, 83 Am. St. 289; *Angle* v. *Chicago, etc., R. Co.* (1894), 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55; *American Law Book Co.* v. *Edward Thompson Co.* (1903), 41 Misc. 396, 84 N. Y. Supp. 225; *Perkins* v *Pendleton* (1897), 90 Me. 166, 38 Atl. 96, 60 Am. St. 252; *Employing Printers Club* v. *Doctor Blosser Co.* (1905), 122 Ga. 509, 50 S. E. 353, 69 L. R. A. 90, 106 Am. Rep. 137; *Dickson* v. *Dickson* (1881), 33 La. Ann. 1261, and many others.

The leading case of *Knickerbocker Ice. Co.* v. *Gardiner Dairy Co., supra,* is probably as strong in support of appellant's theory as any one of the cases cited, and yet the facts are very unlike the facts in the case at bar. In the case just cited, the dairy company needed large quantities of ice, and contracted with a certain company, doing a jobbing business in that product, for twenty tons of ice to be delivered each day. At the time the contract was made, the jobber was purchasing the ice, which it was supplying to its trade, from the Knickerbocker Ice Company. When the ice company learned of the contract between the jobber and the dairy company, it caused notice to be given to the former

that it would refuse to deliver any ice whatever to it, unless it refrained from delivering ice to the dairy company; that the jobber was compelled, by the exigencies of its business, to secure ice from said ice company, and, alarmed by the threat of defendant, broke the contract with the dairy company, and advised it that, by reason of the act of defendant, it could not carry out its said contract; that the dairy company was thereby compelled to purchase ice directly from defendant at a greater price and upon terms less advantageous than it was enjoying under the contract with the jobber.

It will be noted that the controlling element in this case was the coercion of the jobber by the ice company. The jobber was not a manufacturer, but was conducting its business as a selling company, and its very existence depended upon the favor of the ice company. There was no question of master and servant in this instance, and the case appears to have turned upon the question of duress and coercion, which, in effect, deprived the party committing the breach of its freedom of action, and compelled it, in order to maintain its business, to violate a contract which otherwise it would not have done.

In the case at bar, there is no averment in the complaint that Davidson was compelled or coerced, deceived or misled, into violating his contract with appellant. As far as appears from the complaint, Davidson may have been the instigator of the alleged conspiracy. He did not need the aid of appellees to break his contract. He could have done so himself, and, for aught that appears, the breach may have been a voluntary one on the part of Davidson. The allegations of conspiracy, whereby appellees are brought into the case, add nothing to its legal force, except to bind all the parties, if the charge is otherwise sufficient. But a

5. conspiracy, no matter how wicked or malicious, which does not progress beyond a state of mind, cannot in itself form the basis of an action in tort.

It is not contended that the mere bringing of the action in replevin was unlawful, so that the right to recover in this action must be predicated upon the malice imputed 1. to appellees, without reference to the means employed to effectuate the malicious purpose.

In addition to the English cases herein noted, in which the rule contended for by appellant and laid down in the case of *Bowen* v. *Hall, supra,* has been denied, the following are some of the American cases to the same effect: *Boyson* v. *Thorne* (1893), 98 Cal. 578, 33 Pac. 492, 21 L. R. A. 233; *Perrault* v. *Gauthier* (1898), 28 Can. S. C. 241; *Chambers & Marshall* v. *Baldwin* (1891), 91 Ky. 121, 15 S. W. 57, 34 Am. St. 165, 11 L. R. A. 545; *Bourlier Bros.* v. *Macauley* (1891), 91 Ky. 135, 15 S. W. 60, 11 L. R. A. 550, 34 Am. St. 171; *McCann* v. *Wolff* (1888), 28 Mo. App. 447; *Glenco Land, etc., Co.* v. *Hudson Bros., etc., Co.* (1897), 138 Mo. 439, 446, 40 S. W. 93, 60 Am. St. 560, 36 L. R. A. 804; *Ashley* v. *Dixon* (1872), 48 N. Y. 430, 8 Am. St. Rep. 559; *Heywood* v. *Tillson* (1883), 75 Me. 225, 46 Am. Rep. 373; *Payne* v. *Western, etc., R. Co.* (1884), 13 Lea (Tenn.) 507, 49 Am. Rep. 666; *Bohn Mfg. Co.* v. *Hollis* (1893), 54 Minn. 223, 55 N. W. 1119, 21 L. R. A. 337, 40 Am. St. 319; *Jenkins* v. *Fowler* (1855), 24 Pa. St. 308.

The rule is thus stated by Judge Cooley: "An action cannot in general be maintained for inducing a third person to break his contract with the plaintiff; the consequence, after all, being only a broken contract, for which the party to the contract may have his remedy by suing upon it, but if the third person was induced to break his contract by deception, it may be different." Cooley, Torts (2d ed.) 581.

While space forbids a review of all the cases before cited, the case of *Bourlier Bros.* v. *Macauley, supra,* is entitled to consideration by reason of its striking similarity to the English case of *Lumley* v. *Gye, supra.* Appellants in the case of *Bourlier Bros.* v. *Macauley, supra,* were the lessees of the Masonic Temple theater in the city of Louisville, and made a

contract with the manager of Mary Anderson, a dramatic performer of great popularity, and her company, wherein it was agreed that they were to perform upon certain dates at appellants' theatre. Appellants had complied with the contract in every particular, and had, at great expense, made all necessary preparations for said performance. Macauley was the owner of a rival theatre, and with notice of the contract with appellants, and with a malicious intention to injure the reputation of appellants and their theatre as a first-class place of amusement, wrongfully induced and procured said Mary Anderson to refuse to perform in appellants' theatre, and contracted with said manager for the performance of Mary Anderson and her company at his theatre, on the dates covered by agreement with appellants, whereby they were injured in their credit and standing as theatrical managers, and deprived of the profits they would otherwise have made. The court of appeals held that an action would not lie, and after approving the rule laid down by Cooley, herein stated, said: ''There can be consistently and safely but two classes of exceptions to that rule. One was made by the English statute of laborers (23 Edw. III.), to apply when apprentices, menial servants, and others, whose sole means of living was by manual labor, were enticed to leave their employment, and may be applied in this state in virtue of and as regulated by our own statute. The other arises where one party to a contract has been procured against his will or contrary to his purpose, by coercion or deception of a person, to break it to the damage of the other party.'' The court further held that the only remedy appellants had was to proceed against the manager, whose voluntary breach of the contract was the direct cause of the alleged loss and damage.

The same court, in *Chambers & Marshall* v. *Baldwin, supra,* held that an action would not lie where the defendant, with full knowledge of a contract existing between the plaintiff and one Wise, for the sale and delivery of a

certain crop of tobacco, from malice and ill-will toward the plaintiff, and with a design to injure him and benefit himself, procured Wise to break his contract, and to sell and deliver the same goods to the defendant, for the reason that it was not shown that Wise had been induced by either force or fraud to violate his contract.

In the case of *Ashley* v. *Dixon, supra,* the court said: "But even if defendant had induced Patrick not to perform his contract, that alone would not make him liable to the plaintiffs for damages. He could advise and persuade Patrick not to convey the land, under his contract with McEachron, and could, by offering more, induce him to convey to himself, without incurring any liability to McEachron, so long as he was guilty of no fraud or misrepresentations affecting McEachron. If A has agreed to sell property to B, C may at any time before the title has passed induce A not to let B have the property, and to sell it to himself, provided he be guilty of no fraud or misrepresentations, without incurring any liability to B; A alone, in such case, must respond to B for the breach of his contract, and B has no claim upon or relations with C.  *  *  *  But if C makes use of any fraudulent misrepresentations, as to B, to induce A to violate his contract with him, then there is a fraud, accompanied with damages, which gives B a cause of action against C; as if C fraudulently represents to A, that B had failed or absconded, or had declared his intention not to sell to B, and thus induces A to sell to another." To the same general effect are the other cases before cited.

The charge of conspiracy is a new element in actions of this kind. We have already stated that such a charge cannot aid the complaint, as a conspiracy, which results

6. in no unlawful act, manifestly cannot become the basis of an action for damages. The doctrine is stated with clearness in the case of *Kimball* v. *Harman & Burch* (1871), 34 Md. 407, 6 Am. Rep. 340, in which the court said: "There is no doubt of the right of a plaintiff to maintain an

action on the case against several, for conspiring to do, and actually doing, some unlawful act to his damage. But it is equally well-established, that no such action can be maintained unless the plaintiff can show that he has in fact been aggrieved, or has sustained actual legal damage by some overt act, done in pursuance and execution of the conspiracy. * * * It is not, therefore, for simply conspiring to do the unlawful act that the action lies. It is for doing the act itself, and the resulting actual damage to the plaintiff, that afford the ground of the action.'' The authorities are generally in harmony with the principle just stated. Cooley, Torts (2d ed.) 143, 329; 6 Am. and Eng. Ency. Law (2d ed.) 873; *Adler* v. *Fenton* (1860), 24 How. (U. S.) 407, 16 L. Ed. 696; *Bradley* v. *Fuller* (1875), 118 Mass. 239; *Hall* v. *Eaton* (1853), 25 Vt. 458, 463; *Doremus* v. *Hennessy* (1895), 62 Ill. App. 531; *Hutchins* v. *Hutchins* (1845), 7 Hill (N. Y.) 104; *McHenry* v. *Sneer* (1881), 56 Iowa 649, 10 N. W. 234; *Severinghaus* v. *Beckman* (1892), 9 Ind. App. 388; *Rowan* v. *Butler* (1908), 171 Ind. 28.

In the case of *Severinghaus* v. *Beckman, supra,* the court said: ''In such actions the conspiracy was not the gist of the action, and it was unnecessary to prove it, even if alleged. The gist of the action lay in the wrong done, and the damage consequent therefrom.''

The only overt acts shown in the complaint to have been committed by appellees, pursuant to the conspiracy charged, were excluding appellant from appellees' offices; and instituting the action in replevin, whereby appellant was deprived of certain securities, and by that means his contract was destroyed. It does not appear that appellant had any right to remain in appellees' office or that his exclusion was unlawful. The complaint shows that in the trial of the action in replevin, the court adjudged that the securities be returned to appellant, but at the time of the trial the life of appellant's contract had long been extinguished, and the securities were of no fur-

ther use to him in conducting said agency business. It thus affirmatively appears that the damages sought to be recovered had accrued at the time of the trial, and it is the law of this State that "in actions for the recovery of specific personal property, the jury must assess the value of the property, as also the damages for the taking or detention, whenever, by their verdict, there will be a judgment for the recovery or return of the property." §575 Burns 1908, §549 R. S. 1881.

It is also provided by statute that when the defendant is entitled to a return of the property, the judgment "may be for the return of the property, or its value in case a return cannot be had, and damages for the taking and withholding of the property." §599 Burns 1908, §572 R. S. 1881.

These acts have been construed to mean that all damages for taking and detaining property must be settled and determined in the action of replevin, and that whenever there is a trial and judgment in such action, the judgment is conclusive upon the parties, as to all matters that might have been litigated under the issues. *Jackson* v. *Morgan* (1906), 167 Ind. 528, and cases cited.

The only damages for which a liability could, under any state of facts, arise against appellees, resulted from bringing the action in replevin, and if the appellant suffered damages, the place to recover such damages was in the action in replevin. If the taking of the securities, as charged, was unlawful, all damages naturally and proximately resulting from unlawful detention, must be presumed to have been recovered in the action in replevin. A complaining party will not be permitted to split up his cause of action.

As was said in the case of *Jackson* v. *Morgan, supra:* "The claim for damages in the action of replevin, by either party, when there is judgment for the recovery or return of the property, includes the value of the property, as well as the other damages to which he may be entitled. This claim

is entire and indivisible, and a party cannot recover a part of it in one action and subsequently maintain an action for the remainder. * * * If there were other items of damages, the time for appellant to prove and have them assessed was when the action of replevin was tried. He has had his day in court, not only as to the value of the property, but as to all other claims for damages, at least to the time of the trial.''

From every view of the case, we conclude that no cause of action against appellees is stated in the complaint, and the demurrer was properly sustained.

Judgment affirmed.