MOORESVILLE BUILDING, SAVINGS AND LOAN ASSOCIATION *v.* THOMPSON ET AL.

[No. 26,828. Filed June 23, 1937.]

*L. W. Ewbank, Parr & Parr,* and *Edgar M. Blessing,* for appellant.

*Lester C. Morris, Walter G. Todd, A. J. Kahl,* and *Roy W. Adney,* for appellees.

TREANOR, J.—The plaintiffs below prosecuted their suit against the appellant, Mooresville Building, Savings and Loan Association, to recover certain described assets or their value. Validity of plaintiffs' claim depends upon whether the facts make a case of transfer of assets within the statutory provision that "All transfers of notes, bonds, bills of exchange and other evidences of debt owing to any association, or of deposits to its credit . . . made after the commission of an act of insolvency, or in contemplation thereof, with a view to the preference of one creditor over another, shall be entirely null and void." (Sec. 3866 Burns Ind. Statutes 1926.)

The complaint alleged that the plaintiffs were creditors of the Mooresville State Bank and that there were numerous other persons who were creditors of that bank and that the creditors were too numerous to bring them all before the court, and that suit was brought by these plaintiffs for and on behalf of all the numerous creditors of said banking institution. The gist of the alleged unlawful act of which the cause of action arose is stated in the complaint as follows:

"Plaintiffs further allege that the president of said bank at the time, was one Everard F. Hadley, who was also an officer of the defendant, and as these paintiffs understand, was secretary of the defendant and is still acting in such capacity, and that on such day, the defendant herein operating

in conjunction with the said Hadley, as president of such bank, knowing at the time that said bank was about to close its doors and cease doing an active banking business, and knowing at said time that said bank was insolvent and unable to continue its business and pay its creditors, the said president of the said bank fraudulently transferred to the defendants and the defendants fraudulently accepted the sum of Fourteen thousand one hundred fifty-four and seven hundredths dollars ($14,-154.07), consisting of certain assets of said bank which were of such value, and reduced thereby the credit on deposit with said bank in favor of said defendant from the total sum of $14,266.46 to the small balance of $112.39."

The complaint also alleged that the receiver of the bank, Amos Gillaspie, had refused to commence an action to prosecute the claim in question although the plaintiffs had made demands upon him to do so.

Appellant's demurrer to the complaint was overruled and at the request of both the plaintiffs and defendant a special finding of facts was made on which the court stated four conclusions of law. The finding of facts and conclusions of law and the judgment were in favor of the plaintiff. The pertinent portion of the judgment, as set out in appellant's brief, is as follows:

"That plaintiffs recover of and from the defendant, Mooresville Building, Savings & Loan Association, the net sum of $11,756.25 for the use and benefit of the Receiver of the Mooresville State Bank, with their costs . . . and that the amount realized and collected on this judgment be paid to Amos Gillaspy, Receiver of the Mooresville State Bank, or to his successor or sucessors in that office, and be administered by such receiver as part of the assets of said Bank, and that said Mooresville Building, Saving & Loan Association is adjudged to be the owner of said items of property converted as described in special finding No. 8."

The errors relied upon for reversal are:

1. The trial court erred in overruling the demurrer to the complaint.

2. The trial court erred in its statement of conclusions of law.

3. The trial court erred in overruling the motion for a new trial.

The demurrer to the complaint raised the question of the right of the plaintiffs below to maintin the action despite allegations of the complaint which disclosed that the insolvent Mooresville State Bank was in rereivership, and that the defendant, Amos Gillaspie, had been appointed and was at the time of the filing of the suit acting as receiver of the said bank, and despite the further fact that the cause of action which was stated in the complaint had accrued on behalf of the bank before the appointment of Gillaspie as receiver. In short, the contention is that the cause of action, if any existed, could be asserted only by the receiver on behalf of the corporation and its creditors.

Assuming that the complaint states sufficient facts to entitle some, or all of the creditors of the insolvent bank to maintain this suit, it is clear that the facts alleged entitled the named plaintiffs to maintain the suit as the representatives "of all the numerous creditors of like nature of said banking institution." (Sec. 2-220 Burns Ind. Statutes, 1933, §35 Baldwin's 1934.)

It is true, as contended by appellee, that when a receiver has been appointed and is acting, such receiver acts for the insolvent corporation and represents the interests of creditors. Ordinarily such receiver is the only person who can maintain an action for claims which could be asserted by the insolvent corporation, if the insolvent corporation were legally capable of acting for itself. But since the receiver is also charged with the legal duty of protecting the interests of creditors, he can not by inaction deprive the creditors of their beneficial interest in the assets of the insolvent corpora-

tion. In the instant case the plaintiffs requested the receiver to take action to enfore the claim in question and the receiver refused to act. The plaintiffs might have petitioned the court in which the receivership was pending to direct its receiver to prosecute the claim. Instead of taking that course the creditor-plaintiffs filed their complaint in the court in which the receivership was pending and named the receiver as defendant. But the prayer of the complaint clearly informed the court that the receiver was merely a nominal defendant and that the action, in effect, was being prosecuted for the benefit of the receiver. No relief was asked against the receiver. We must assume that the court approved the proceeding and treated the suit as being in substance one brought by the creditors for the benefit of the receivership which was pending in said court.

In our opinion the complaint alleges facts sufficient to constitute a cause of action in favor of the plaintiffs. The trial court did not err in overruling defendant's demurrer to the plaintiffs' complaint.

Under the motion for a new trial appellant specifies the following grounds:

1. The admission in evidence of each of 5 records of meetings of the bank directors of the Mooresville State Bank.
2. The admission in evidence of each of two reports of the Indiana State Banking Department.
3. The decision is not sustained by sufficient evidence.
4. The decision is contrary to law.
5. The damages are excessive.

No question was raised as to the authenticity of the minutes, but they were objected to on the ground that they were *ex parte* statements of facts made by third parties, which were made in some instances considerable time before December 26, 1930, and were in no way binding upon the defendant.

The official minutes of the board of directors are as competent as any other records of the bank to show the condition of the bank and the action of officials in the management of the affairs of the bank in so far as they are relevant to the questions under judicial investigation. The minutes of two of the meetings disclosed that Mr. E. F. Hadley, President of the bank and a member of the board of directors, submitted, and read, to the directors the two reports of the bank examiners, the competency of which is questioned. And we think it was proper to introduce the copies of these reports in order to inform the court of what information the bank directors had relative to the condition and management of the bank. The authenticity of the copies of the examiners' reports is not questioned, and they were found in the files of the bank by the receiver when he assumed charge. The court in admitting in evidence the minutes of the meetings of the board of directors and the copies of the reports of the bank examiners stated that they were being admitted for the purpose of showing the condition of the bank and the action of the officials, and we think that they were properly admitted for the purposes stated and that the action of the trial court was not erroneous.

It is contended that the decision of the trial court is not sustained by sufficient evidence and is contrary to law. There was a special finding of facts by the court upon the request of both parties. The substance of the finding, as set out in the first five paragraphs of the finding of facts, is as follows:

1. The named plaintiffs are creditors of the Mooresville State Bank and the action is prosecuted for themselves and for all other creditors of the Mooresville State Bank.

2. The Mooresville State Bank is a bank of discount and deposit, was closed December 26, 1930, and thereafter on the 11th day of January, 1931,

one Amos Gillaspie was duly appointed receiver for the bank on order of the Morgan Circuit Court.

3. The named plaintiffs, by and through their attorneys, made written demand upon the duly appointed receiver to commence and maintain an action for the purpose of enforcing the claim which is involved in this action, and the receiver refused to commence such action.

The facts enumerated in paragraphs six to eleven, inclusive, of the finding of facts are as follows:

"6th. That during the active existence and operation of the Mooresville State Bank, one Everard F. Hadley was the president and also a director of said bank, and during all of said time was also a director and secretary of said defendant, Mooresville Building, Savings & Loan Association. That during all of said time, the said Hadley was also an officer of a corporation known as the Fall Creek Manufacturing Company, a partner in a partnership known as Fall Creek Furniture Company, and was also treasurer of a corporation known as Morgan County Agriculture Association and was accustomed to execute checks on the several bank accounts of said concerns, which were maintained in said Mooresville State Bank by same at the time of the closing of said bank and for a long time prior thereto.

"7th. The court further finds that said Mooresville State Bank was on the 26th day of December, 1930, and for more than thirty days prior thereto, wholly insolvent.

"8th. That on the 26th day of December, 1930, said defendant, Mooresville Building, Savings & Loan Association had on deposit in said bank to its credit the sum of $14,266.46, and that said defendant by and through its Secretary, Everard F. Hadley, being the same Hadley who at the time was President of said bank, executed to said Bank its certain check dated Dec. 24-30 in the sum of $6,-809.47, drawn against its credit in said Bank in payment for four certain Bank Acceptances, the property of said bank, in the following amounts set opposite the number by which said acceptances were carried on the books of said bank, to wit:

No. 21474...........................................$2,455.00
No. 21255............................................  941.47
No. 21431............................................ 2,055.00
No. 21569............................................ 1,358.00

      Total...........................................$6,809.47

"The said defendant Association also drew and executed its check on said bank by and through the said Everard F. Hadley, its secretary, in the sum of $4,870.00, which check was dated December 24, 1930, in payment for four mortgage notes or notes, the same being the property of said bank, in the following amounts set opposite the number by which said notes were carried on the books of said bank, to wit:

No. 15724 R. M. Hadley....$2,000.00 Ind. $70.00
No. 14289 C. A. Vestal......  300.00
No. 5479 C. A. Vestal........ 2,000.00
No. 11619 R. M. Mannon   500.00

    Total .......................$4,800.00    $70.00

                  $4,870.00

"That said defendant Association also drew and executed its check on said bank by and through the said Hadley, as Secretary, which was dated December 26, 1930, in the sum of $1,935.33, to the order of Fall Creek Manufacturing Company, in payment of three items described either as notes, bank acceptances, trade acceptances, and to purchase said items in the sum of $645.11 each, and which items were deposited in said bank as cash to the credit of Fall Creek Manufacturing Company, on said 24th day of December, 1930, as obligations of Norman Furniture Company.

"That said defendant Association also drew and executed its check dated December 22, 1930, by and through the said Hadley, in the sum of $539.27, in payment of five items described either as notes, accounts or trade acceptances in the sums as follows:

"Three for $100.00 each, one for $100.50, and one for $138.77, and which items were deposited as cash in said bank to the credit of Fall Creek Manu-

facturing Company, on said 22nd day of December, 1930, as obligations of the Peck Manufacturing Company. That said items as obligations of said Norman Furniture Company and Peck Manufacturing Company, became at the time of such deposits, the property of the Moorseville State Bank.

"The court further finds that the four checks hereinbefore referred to were all paid on December 26, 1930, by said bank out of the account of the defendant Association.

"9th. The court further finds that the items described and referred to in Finding No. 8, were each and all transferred and sold to the defendant Association with a view to the preference of said defendant Association to other creditors of said bank and in contemplation of insolvency of said Mooresville State Bank.

"10th. The Court further finds that all of the items referred to and described in Finding No. 8, have been appropriated and converted by said defendant Association to its own use and that said property so converted is the property of said Association and that there is due from said defendant Association to plaintiffs the sum of $14,154.07, with interest at 6% per annum from December 26, 1930, to date, in the sum of $3,263.80, or a total of $17,417.87.

"11th. That Amos Gillaspie as Receiver of the Mooresville State Bank has declared and paid in the aggregate a 40% dividend to the depositors of said bank except to the defendant, Mooresville Building, Savings and Loan Association; that said receiver has paid to said defendant a 40% dividend only on defendant's deposit of $112.39 at the close of said bank Dec. 26, 1930."

There is no contention that the evidence was insufficient to support the finding of the facts which are recited in paragraphs 1 to 5, inclusive, of the finding. And these facts are sufficient to establish the legal right of the named plaintiffs to maintain the action. Consequently the trial court's statement of its conclusions of law is not open to any objections which are based upon the assumption that the spe-

cial finding does not show a right of action in the plaintiffs.

Appellant earnestly urges that there was no competent evidence to support a finding of the fact that the "Mooresville State Bank was on the 26th day of December, 1930, and for more than thirty days prior thereto, wholly insolvent." We have stated above that the copies of the reports of the bank examiners were properly admitted and the information contained in these reports disclosed that the policies and practices of the management of the bank were undermining the financial safety of the bank; and there was considerable evidence that at the time the bank was closed on December 26, 1930, the objectionable policies and practices were still being followed. Furthermore the minutes of the meeting of the board of directors which was held December 26, 1930, contained the following:

"Motion made by C. L. Hallum that due to the continuous decreases of deposits we deem it advisable for the protection of depositors to close and turn the assessments (assets) of this bank over to the State Banking Department. We believe the bank to be solvent. Seconded by A. L. Wheeler. Motion carried."

Also the receiver who took charge of the assets of the bank on January 11, 1931, testified as follows respecting the value of the assets of the bank as of December 26, 1930:

"Q. Basing your judgment upon your knowledge you may tell the court what the assets of the bank were worth as of December 26, 1930?
A. You mean what the assets of the bank would be worth at that time?
Q. Yes.
A. At that time in my opinion it was different to what it is now.
Q. What were they worth then?
A. Fifty cents, maybe more, couldn't say exactly.

Q. Wouldn't be worth 85 or 90 cents would it?
A. No, don't think so."

On re-direct examination the following testimony was given by the receiver, Mr. Gillaspie:

"Q. Will this trust pay out 100 per cent on the dollar?
A. No.
Q. What in your judgment in addition to 40 per cent paid already will this trust pay? Can you give a limit?
A. Not over ten per cent."

There was other testimony concerning the value of particular assets which strongly supported the inference that the Mooresville State Bank was insolvent on December 26, 1930, and for considerable time prior thereto.

We conclude that there was sufficient evidence to support the finding of fact that the Mooresville State Bank was insolvent on December 26, 1930, and had been insolvent for 30 days prior thereto.

Appellant urges that the amount of recovery was excessive and as a basis for this contention points out that appellant's bank deposit at the beginning of business on the morning of December 26, 1930, was only $12,203.58; and that on the 26th appellant's deposit account was increased by deposits of $2,628.32, a part of which was paid out the same day on checks drawn on appellant's deposit account. Appellant's contention in this respect is summed up as follows:

"And that the bank and its creditors represented by these plaintiffs cannot possibly be entitled to recover more than the prior $12,203.58 deposit, plus the difference between the deposit of $2,628.32 with which defendant's bank account was credited that day, and $2,474.60, made up of the aggregate of checks for $539.25 and $1,935.33, expended by defendant in buying securities from Fall Creek Manufacturing Company which were charged

against that account at the same time; together with accrued interest, and reduced by the setoff allowed."

The appellant assumes that the checks for $539.27 and $1,935.33 were "expended by defendant in buying securities from the Fall Creek Manufacturing Company." But the trial court found that the securities in question had become the property of the Mooresville State Bank prior to the 26th day of December, 1930, and that the checks in payment therefor were paid on December 26, 1930, out of the account of the defendant association; and that the securities were sold and transferred to the defendant for the purpose of creating a preference in contemplation of insolvency.

There is no one item of testimony or other evidence which conclusively proves that the securities had become the property of the Mooresville State Bank prior to December 26, 1930, but there is testimony and exhibit evidence from which the trial court reasonably could have inferred that such was the case and that E. F. Hadley, as secretary-treasurer of appellant, with authority to draw on the account of the appellant for the purchase of commercial paper, and as president and director of the bank, with actual control of its business transactions on, and immediately prior to the 26th day of December, 1930, and as treasurer of the Fall Creek Manufacturing Company, with authority to sign its checks and to accept checks drawn in its favor, did in fact effect a transfer of the bank's securities on December 26, 1930, under the guise of a purchase from the Fall Creek Manufacturing Company. In support of such a conclusion there was testimony by one witness that Mr. Hadley told him that he, Mr. Hadley, "had bought a lot of short term paper in order to save the money for the Building and Loan Association." And another witness testified that Mr. Hadley told him that

"they had taken over some short time paper on the money of the Building and Loan that they had in the bank to save it for building and loan." And the latter witness testified that Mr. Hadley had named some of the paper and witness recalled that he had mentioned "Robin Hadley, C. A. Vestal Trade Acceptances, and paper from the Fall Creek Manufacturing Company."

The trial court reasonably could have inferred that E. F. Hadley through his actual control of the affairs of the Mooresville State Bank, the Fall Creek Manufacturing Company, and of the appellant Building and Loan Association, effected a transfer of assets of the bank to the appellant Building and Loan Association in contemplation of the commission of an act of insolvency by the Mooresville State Bank, and with a view to the preference of the defendant association over other creditors of the Mooresville State Bank.

We conclude that the evidence was sufficient to sustain the decision of the court and that such decision was not contrary to law. We also conclude that there was no error in the court's statement of its conclusion of law.

Finding no reversible error the judgment of the Boone Circuit Court is affirmed.