WADE ET AL. *v*. CULP

[No. 16,099.   Filed November 29, 1939.   Rehearing denied January 23, 1940.   Transfer denied March 4, 1940.]

*Walter R. Arnold* and *John Degnan,* for appellants.

*Yeagley & Yeagley,* for appellee.

STEVENSON, J.—This action was instituted by the appellee against the appellants to recover damages against the appellants for wrongfully conspiring together to cause a breach of contract between the appellee and the appellant Charles T. Wade.

The issues were closed by an answer in general denial and the case was submitted to the court for trial without jury and the court made a special finding of facts and stated conclusions of law thereon. The court found for the appellee and rendered judgment in his favor against the defendants in the sum of $4984.00. The exceptions to the conclusions of law are the basis of the assigned errors in this court.

The findings of fact are long and it would serve no good purpose to embody them all in this opinion. It is sufficient to say that the complaint alleged and the facts as found by the court recite that in 1933 the appellee, George K. Culp, was engaged in the manufacturing business in Dowagiac, Michigan; that prior to June 21, 1933, Charles T. Wade, appel-

lant herein, consulted with Culp about the possibility of inventing an electric steak broiler. As a result of these interviews, the said Charles T. Wade and George K. Culp entered into a contract by the terms of which the appellee agreed to furnish his shop facilities, materials, engineers, designers, money and the necessary wherewithal to enable the said Charles T. Wade to develop a working model of said steak broiler along the lines indicated by the said Wade. It was further agreed that after such working model had been perfected, the said Culp was to arrange for the production and sale of such commodity, the said Wade to have twenty percent (20%) interest in the enterprise. It was further stipulated that the said Wade should continue to be employed at a satisfactory salary so long as his services were satisfactory.

The court further found that at the time of the making of said contract, the said Culp had in his employment a civil engineer whose name was Shrum, and the said Wade, together with the said Shrum, entered upon the work of perfecting a steak broiler and the said Culp furnished his factory, his employees, material, and money necessary in the development of said broiler. After said broiler had been so developed that the model worked successfully, the said Culp began contacting different manufacturing establishments respecting the manufacture and sale of said broiler. On May 4, 1934, Culp was notified by Wade that he had made arrangements for the production and sale of said broiler by the Electric Sprayit Company, appellant herein, and had assigned all his patent and other rights in connection therewith to them. The court further found as a fact that prior to said date and in February or March, the said Wade had contacted the Electric

Sprayit Company through its president, Simon Deutsch, in an effort to induce them to take over the manufacturing and sale of the electric steak broiler. Following said interview, said appellant Deutsch submitted a proposition to the said Wade for the purpose of inducing the said Wade to abandon the said contract he had with Culp and to contract with the appellant Electric Sprayit Company for the purpose of manufacturing and marketing the electric steak broiler. This contract was subsequently entered into between the said Wade and the Electric Sprayit Company, by the terms of which contract the Electric Sprayit Company employed Wade to devote his full time and effort to the development and improvement of said broiler. As a part of this contract the said Wade assigned all his rights, title, and interest in said electric broiler to the Electric Sprayit Company. After the said Electric Sprayit Company had entered into this contract, said company also entered into a contract with the appellee's engineer Shrum for his services and the said Shrum also agreed to devote his entire time to the development and improvement of said broiler. Following the execution of said contracts, the Electric Sprayit Company notified all the manufacturing establishments with whom they knew Culp had been dealing that the said Culp had no further interest in the electric steak broiler and that all of the rights pertaining to the same were now owned by the Electric Sprayit Company.

The court further found by Finding No. 15:

"That thereafter, to-wit: after the said defendant, Charles T. Wade, and D. J. Shrum, identified themselves with the defendant, Electric Sprayit Company, as hereinbefore found and after said notices were sent out to different

manufacturing institutions by the said defendants, the plaintiff herein was unable to carry on and to further perform his contract with the defendant, the said defendant, Electric Sprayit Company, and said defendant, Charles T. Wade, and with the said D. J. Shrum, and because of such notices sent by said defendants to other manufacturing industries."

The court further found that the said Culp had expended in the furnishing of materials, labor, and manufacturing facilities the sum of $8661.00 in the development of said model and "that the plaintiff (Culp) lost all of the money by him expended in the performance of his contract with the defendant Charles T. Wade."

Finding No. 21 of the court is as follows:

"That the defendants herein did collude and conspire together for the purpose of rendering the plaintiff unable to perform his contract with the defendant, Charles T. Wade."

On this finding of facts the court stated its conclusions of law as follows:

"1—That the defendants did by their conduct unlawfully confederate and conspire together for the purpose of interfering with the plaintiff's contract with the defendant, Charles T. Wade, and in preventing the plaintiff from the performance of said contract.

"2—That by reason of such unlawful confederacy and conspiracy between the defendants preventing the plaintiff from the performance of his contract with the defendant, Charles T. Wade, the plaintiff suffered loss and damage in the sum of four thousand nine hundred eighty-four ($4,984.00) dollars.

"3—That the plaintiff is entitled to recover of and from the defendants the sum of four thousand nine hundred eighty-four ($4,984.00) dollars."

The errors assigned and the propositions discussed by the appellants challenge the correctness of these conclusions of law. The appellants contend that the trial court erred in its conclusions of law No. 1, first for the reason that Wade had a right to sell the subject matter of the enterprise and that such a sale actually resulted in the final objective which the agreement contemplated. We cannot agree with these contentions. We think it sufficient answer to these contentions to note that the appellee by the terms of his contract was given the express right to arrange for the production and sale of this device. This right was definitely denied him by the conduct of the appellants and we cannot assume that such conduct was harmless.

It will be noted by the court's finding No. 21, above quoted, that the appellants herein did collude and conspire together for the purpose of rendering ▮ Culp unable to perform his contract. This finding of fact must be accepted as true by this court on appeal. *Ft. Wayne Smelting & Refining Works* v. *City of Ft. Wayne* (1938), 214 Ind. 454, 14 N.E.(2d) 556; *Central Pharmacal Co.* v. *Salb* (1939), 106 Ind. App. 495, 13 N.E.(2d) 875; *Mooresville Building, Savings and Loan Assn.* v. *Thompson et al.* (1937), 212 Ind. 306, 9 N.E.(2d) 101. Such conduct on the part of the appellants resulted in a loss to the appellee and their conduct was therefore wrongful and unlawful. The rule in such cases has been announced as follows:

"Generally speaking, a combination for the purpose of causing a breach of contract is an unlawful conspiracy. A person who, by conspiring with another or by collusive agreement with him, assists him to violate his contract with a third person and to obtain the benefit of that

contract for himself commits an actionable wrong." 11 Amer. Juris. Sec. 50.

The appellants also contend under their first assignment of error that there can be no cause of action for inducing a breach of contract unless the same has been accomplished by the employment of force, threats, intimidation, or fraud. They rely upon *Jackson* v. *Morgan* (1912), 49 Ind. App. 376, 94 N.E. 1021, as authority for their contention. In America as well as in England, it is uniformly held that inducing a breach of contract by use of force, threat of force, or fraud is actionable. If the elements of intimidation and fraud are absent, the great majority of American states nevertheless still follow the English doctrine which allows a right of action for maliciously procuring a breach of contract regardless of the nature of that contract. 41 Harvard Law Review 728; 33 Mich. Law Review 943. The rule has frequently been announced that:

"A person that induces a party to a contract to break it, intending thereby to injure another person or to get a benefit for himself commits an actionable wrong unless there is sufficient justification for interference." 15 Ruling Case Law 54.

The court found as a fact in the case at bar that the defendants by their conduct intended to interfere with the business of the plaintiff and to prevent the plaintiff from the further transaction of the business incident to the manufacture and sale of said broiler. On this express finding, the law seems to be well settled that:

"If a person knowingly and intentionally interferes with the express contract rights of an employer with his employe and the purpose and

intent of such interference is to injure such employer, and it does result in his injury, an action will be sustained to recover damages therefor." *S. C. Posner Co.* v. *Jackson* (1918), 223 N.Y. 325, 332, 119 N.E. 573, 575.

This rule is again announced in the case of *Campbell* v. *Gates* (1923), 236 N.Y. 457, 460, 141 N.E. 914, in the following language:

> "The great weight of authority in this country and in England is to the effect that, if A. has a legal contract with B., either for the rendition of service or any other purpose, and C., having knowledge of the existence thereof, intentionally and knowingly, and without reasonable justification or excuse, induces B. to break the contract, by reason of which A. sustains damage, an action will lie by A. against C. to recover the same. . . . The action of C. is malicious, in that, with the knowledge of A.'s rights, he intentionally and knowingly and for unworthy or selfish purposes, destroys them by inducing B. to break his contract. It is a wrongful act, done intentionally, without just cause or excuse, and from this a malicious motive is to be inferred. This does not necessarily mean actual malice or ill will, but the intentional doing of a wrongful act without legal or social justification. The action is predicated, not on the intent to injure, but on the intentional interference, without justification, with A.'s contractual rights, with knowledge thereof. It is a legal wrong, and one who commits it, if damage be sustained, must answer therefor."

This same rule is announced in each of the following cases: *Doremus* v. *Hennessy* (1898), 176 Ill. 608, 52 N.E. 924; *Kock* v. *Burgess* (1914), 167 Iowa 727, 149 N.W. 858; *Nulty* v. *Hart-Bradshaw Lumber & Grain Company* (1924), 116 Kan. 446, 227 Pac. 254; *Sorenson* v. *Chevrolet Motor Company, et al.* (1927),

171 Minn. 260, 214 N.W. 754; *Burden* v. *The Elling State Bank* (1926), 76 Mont. 24, 245 Pac. 958; *Singer Sewing Machine Company* v. *Lang* (1925), 186 Wis. 530, 203 N.W. 399; *Hooker, Corser & Mitchell Company* v. *Hooker* (1915), 88 Vt. 335, 95 Atl. 649; *Raymond* v. *Yarrington* (1903), 96 Texas 443, 72 S.W. 580; *Tubular Rivet & Stud Company* v. *Exeter Boat & Shoe Co.* (1908), 159 Fed. Reporter 824. See also: 12 Corpus Juris 586; 12 Corpus Juris 604; 38 Cyc. 508; 15 Ruling Case Law 14; 33 Mich. Law Review 943; 41 Harvard Law Review 728-760.

The case at bar is similar in facts to the case of *Sorenson* v. *Chevrolet Motor Co., supra.* In that case Sorenson had an agency contract with the Chevrolet Motor Company which gave him an exclusive territory as a dealer for the company. Sorenson had invested large sums in advertising and in equipment as incident to his business as an agent. The defendant Sander was the plaintiff's competitor. Sander knew of the plaintiff's contract with the corporation and the defendants entered into an agreement to acquire the plaintiff's business for Sander. As a part of this plan, the corporation wrongfully repudiated its contract with the plaintiff and entered into a contract with Sander. In holding the defendants liable for such conduct the court said, page 265:

"Under his contract with the corporation, plaintiff had built up a valuable business. His relations with the company were mutually satisfactory. Sander, a stranger to the contract, wished to put an end to the business relations between plaintiff and the company and induced the company to repudiate the contract. If he had done this for no other purpose than to deprive plaintiff of the benefits of the contract and of his established business, under all the cases Sander would be liable for his wrongful inter-

ference in the contract relations between plaintiff and the company. . . . The contract between the plaintiff and defendant corporation imposed duties and rights. This contract and the benefits therefrom constituted a property right. An intentional interference therewith by one not having an equal or superior right is wrongful and precipitates liability. The intentional procurement of the breach of an existent contract, without just cause or excuse, makes him, who causes the breach, liable for resulting damages, and this is so even though he promoted his legitimate interests. When one has knowledge of the contract rights of another, his wrongful inducement of a breach thereof is a willful destruction of the property of another and cannot be justified on the theory that it enhances and advances the business interests of the wrongdoer.''

In the case at bar it will be noted that the appellant Wade came to the appellee with an idea. He was an inventor and he agreed with the appellee that he would spend his entire time in perfecting his idea and in developing a working model of an electric steak broiler. The appellee on the other hand was to furnish the facilities of his factory, money, materials, engineering services, and other things needed for the successful development and marketing of the device. The appellee was to be the principal owner and the guiding hand in the business. He owned eighty (80) percent thereof and the appellant Wade owned twenty (20) percent. Nowhere in the contract was Wade given any power or authority, either express or implied, to sell the entire assets of the business and all that Wade was required to do was embraced in the following language of the contract: ''. . . you to spend your entire time in the development of a working model along the lines of your general idea. . .''

This contract imposed certain duties and conferred certain rights. The appellee in reliance thereon expended more than $8600.00. The appellants knew of the appellee's rights under this contract. They knew that he had furnished the money and the means which enabled the appellant Wade to perfect his idea. They knew that the appellee had contacted many individuals and business concerns in an effort to interest them in the device which they had succeeded in perfecting. The court found as a fact that the defendants in their conduct intended to interfere with the further transaction of the appellee's business in perfecting and marketing this device. They obtained from Wade the assignment of the patent issued by the United States Patent Office on said device and that they attempted to and did manufacture and market this device in contravention and denial of all the appellee's rights. As a result of such conduct the appellee lost all the money he had expended in the adventure.

In the light of the foregoing authorities, it is our opinion that the appellee was entitled to recover damages for the loss sustained as a direct and proximate result of the appellants' wrong. It was not necessary that the various acts of the appellant Wade be induced by fraud, deceit, or coercion in order to support the court's first conclusion of law. Insofar as the case of *Jackson* v. *Morgan*, supra, is in conflict, the same is hereby overruled. The court did not err in its conclusion of law No. 1.

The appellants allege under their second assignment of error that the trial court erred in its conclusion of law No. 2. The appellants contend that there was no finding of fact which warrants the court in concluding as a matter of law that damages were

sustained by the appellee as a proximate result of any act or omission on the part of the appellants. It will be noted that the court specifically found that the appellee had expended in the furnishing of materials, labor, and manufacturing facilities the sum of $8661.00 in the development of said working model and in his efforts to market the same. The court further found that all of this money by him expended in the performance of his part of the contract was wholly lost. The court was certainly entitled to infer that this loss was sustained because of the appellants' wrongful conduct. The contract in question gave the appellee a property right in the device which his money and means had aided in perfecting. When this was taken away from him he sustained a loss. While the measure of damages available to a court in an action for wrongfully inducing a breach of contract is not uniform in all jurisdictions, it seems to us that the correct rule is to hold the tort feasor responsible for all of the consequences growing out of his wrongful act. This was the rule announced in the case of *Hooker, Corser, and Mitchell Company* v. *Hooker,* supra, and is also the rule announced in the case of *Anderson* v. *Moskovitz* (1927), 260 Mass. 523, 157 N.E. 601. It also seems to be the rule followed by the New York cases, the last one of which is *Hornstein* v. *Podwitz* (1930), 254 N.Y. 443, 173 N.E. 674. In such cases the measure of damages is the loss actually incurred. *Jackson et al.* v. *Stanfield, et al.* (1893), 137 Ind. 592, 36 N.E. 345. In our opinion the court was warranted in awarding damages on the facts found. The character of the action is such that exemplary damages might well have been awarded. *Sharts* v. *Douglas, Rec.* (1932), 94 Ind. App. 201, 163 N.E. 109.

It is our opinion, therefore, that under such a find-

ing of facts the court did not err in either of its second or third conclusions of law.

Finding no error in the conclusions of law, the judgment of the trial court is affirmed.

Dudine, J., and Bridwell, J., dissent.