Herbert J. SPIER, Plaintiff-Appellant,

v.

The HOME INSURANCE COMPANY, Defendant-Appellee.

No. 16792.

United States Court of Appeals Seventh Circuit.

Dec. 16, 1968.

John H. O'Hara, Indianapolis, Ind., for plaintiff-appellant; O'Hara & Kohlmeyer, Indianapolis, Ind., of counsel.

Hugh E. Reynolds, Jr., Indianapolis, Ind., for defendant-appellee; Locke, Reynolds, Boyd & Weisell, Indianapolis, Ind., of counsel.

Before DUFFY, Senior Circuit Judge, and HASTINGS and FAIRCHILD, Circuit Judges.

DUFFY, Senior Circuit Judge.

This is an appeal from a judgment on a directed verdict for the defendant. The complaint was in two paragraphs. The first alleged a breach of contract and the second charged an unlawful interference by the defendant with the business relationship between plaintiff and one Ernest Wheaton. Compensatory damages were sought in both counts, while punitive damages were also demanded in the second count.

Plaintiff is and was at all pertinent times, an independent insurance agent representing the defendant as well as other insurance companies. He had a long-time acquaintance with Ernest Wheaton and he began to write insurance for him in 1948 when Wheaton organized his own moving company.

The asserted basis for plaintiff's suit is the claim that defendant Insurance Company induced Wheaton to transfer his insurance policies in The Home Insurance Company from plaintiff's agency to Richard Maxwell. Plaintiff says this was accomplished first, by terminating the agency agreement between The Home Insurance Company and plaintiff, and secondly, by advising Wheaton of the termination.

Plaintiff concedes that the actions of defendant and Wheaton, taken at face value, lay well within their respective rights. Plaintiff further admits that only if it can be shown that the transfer of the business from plaintiff was induced by the defendant, can the plaintiff's case be established. Plaintiff sought to make such proof largely by circumstantial evidence.

Plaintiff claims that the Court erred in not permitting plaintiff to ascertain by interrogatories and by the motion to produce and by subpoena to Richard Maxwell, the premium volume of other agents of defendant within the State of Indiana, and, in particular, the premium volume of Richard Maxwell. Error is also claimed because of the trial court granting a motion for a directed verdict at the close of plaintiff's evidence.

In the 1930's, Ernest Wheaton, then an employee of Mayflower Van Lines, met Robert Maxwell who represented defendant The Home Insurance Company. Maxwell explained to Wheaton the various coverages offered by Home.

In 1945, Wheaton arranged for Maxwell to place broad transit and cargo coverage with Home for the new Clipper Van Lines, later known as Wheaton Van Lines. Wheaton asked if his friend Spier (the plaintiff) could be the agent. The first policies thereafter were issued by a Home subsidiary through the plaintiff. Later, plaintiff obtained a Home insurance agency contract, and policies were thereafter issued by The Home Insurance Company. Robert Maxwell became a vice president of The Home Insurance Company.

Wheaton took an active interest in his insurance program. About once a year, he went to New York to discuss rates, types of coverage and other insurance matters with Robert Maxwell. Any changes were made in New York and thereafter Spier signed them as agent.

In 1961, plaintiff Spier signed a contract with Home to write at least $200,000 annual premium volume for the Home Group. Spier also received a contract to represent Home Indemnity Company. The first year, however, Spier wrote less than $100,000 premiums of which about 80% were from Wheaton policies. Spier was advised by defendant that unless he did better, his Home contract would be terminated.

On April 5, 1963, Spier signed a contract which terminated his agency and which placed him on a "Limited Agency Agreement" which was for a term of five years. Defendant claims this contract was for the sole purpose of servicing policies issued prior to the Agency Agreement. The contract gave Spier an opportunity to rewrite the Home policies at their normal termination date in a different company.

The Termination Agreement provided: "(6) This agreement supersedes all previous agreements, whether oral or written, between the Company and the Agent and may be terminated by either party at any time upon written notice to the other."

Spier did not tell Wheaton that his agency had been terminated by Home. When questioned, he admitted he believed Wheaton would remain with the Home Company and would find another agent.

Spier had Wheaton's workmen's compensation, public liability and property damage coverage with Continental Casualty, and his personal policies with Northern of New York.

In mid–1963, Northern cancelled Wheaton's policies. Spier replaced them in Federal and tendered them to Wheaton. Wheaton refused, insisting they be placed with The Home Insurance Company. Spier was unable to do so because his agency had been terminated. Without Wheaton's knowledge, Spier brokered the policies, placing his agency stamp over the stamps of two agents who had actually written them, and delivered them to Wheaton. Apparently, Wheaton did not realize that these policies had been brokered.

■ The second count of plaintiff's complaint is in tort. He alleges that the termination of his agency constituted a tortious interference with his business relation with Wheaton. We do not think that this is the law of Indiana. Wheaton was entitled to take the action he did; it was not a breach of contract. Therefore, Home cannot be held liable for inducing a breach of contract. See Guethler v. Altman, 26 Ind.App. 587, 60 N.E. 355; Wade v. Culp, 107 Ind.App. 503, 23 N.E.2d 615; Wahlgren v. Bausch & Lomb Optical Company, 7 Cir., 68 F.2d 660 (1934). Indiana has permitted recovery in instances where the interference damaged relations with persons with whom plaintiff had no contract. But it is critical that there the defendant acted illegally in achieving his end. Fort

Wayne Cleaners and Dyers Association et al. v. Price et al., 127 Ind.App. 13, 137 N.E.2d 738. Here, the defendant was entitled to terminate Spier's agency without cause. That Home's object may have been to benefit another does not make the action tortious. See Jackson v. Morgan, 49 Ind.App. 376, 94 N.E. 1021. We therefore hold that defendant's action did not constitute a wrongful interference with a business relation under Indiana law and that it was appropriate to direct a verdict on this count.

The first count of the complaint alleges that defendant's action constituted a violation of the American Agency System, which was impliedly a part of the contract. Basically, the System provides, inter alia, that the insurance company will not use information about policy expirations to induce an insured to change agents. The "expirations" belong to the agent.

Spier was placed on a limited agency basis as a consequence of his failure to meet the premium level previously agreed to. When Wheaton learned of the new arrangement thirteen months later, he decided that he did not wish to do business with Spier any longer. He resented the fact that plaintiff had brokered two of his policies and had plaintiff's name placed over the names of the agents who had actually handled the matter. Wheaton testified "He did not tell me that he was writing these policies through another agent and I did not want to do business through two agents, so I concluded, myself, at my own office in Indianapolis that this was enough for me; I would cancel the remaining business which Spier agency had for our company."

■ Wheaton further testified that no one from the Home had at any time solicited his business or encouraged him to change agents. Plaintiff points out that Wheaton was informed that Spier's agency had been terminated. However, the System does not prohibit an insurance company from giving such information. In Woodruff v. Auto Owners Insurance Co., 300 Mich. 54, 1 N.W.2d 450, the Michigan Supreme Court said:

"Defendant not only had a right to advise these policyholders of the termination of the Woodruff Agency, but it was its legal duty to do so or in the alternative be bound by any action of Mr. Woodruff within the scope of his former agency; and this after his agency had been terminated." This duty was not changed by the System, which applied in that case.

For over twenty years plaintiff enjoyed substantial commissions as the agent for The Home Insurance Company, which came about because of plaintiff's friendship with Wheaton. During this period, plaintiff was aware of the close business relationship between Robert Maxwell and Ernest Wheaton. For a number of years of this period, Richard Maxwell was a Home agent. There is no indication that Robert Maxwell, at any time, made an effort to have his old friend Wheaton transfer any of his business to his brother Richard.

Against this evidence, we have only the contention that the premium level requirement was set with an eye toward terminating Spier's agency for the purpose of inducing Wheaton to change agents. Given this posture of the evidence, it was undoubtedly correct to direct a verdict for the defendant on the first count also.

Plaintiff's most substantial contention is that it was error to refuse to permit him to ascertain by interrogatories and by motion to produce and by subpoena to Richard Maxwell, the premium volume of other agents of the defendant in the State of Indiana, and in particular, the premium volume of Richard Maxwell. Through this procedure, he hoped to give some life to his position that the requirement that he write $200,000 worth of business was designed to eliminate him as an agent, and that this ultimately resulted in an inducement to Wheaton to change agents.

He hoped to show that no other agent produced $200,000 volume and, more particularly, that Richard Maxwell did not. From this he presumably wished the jury and the court to infer that the stated reason for terminating his agency was specious. And, if the stated reason was specious, then the actual reason may have been the hope that Wheaton would take his business to Richard Maxwell. Plaintiff apparently contends that this hope or expectation constituted the inducement required to violate the System.

The defendant, on the other hand, argued strenuously that the premium level achieved by each agent was affected by a wide variety of factors, and that it was impossible to draw any inferences by comparing volumes. The requirement for any agent was individually negotiated, and any comparisons would require an elaborate analysis of each agent's situation. Further, the information sought involved defendant's business relations with persons not involved in this litigation, and they had an interest in not revealing this information. Lastly, the defendants, by affidavit, pointed out that 60% or more of Spier's volume was generated by the Wheaton account, and they implied that the requirement that he produce more business was well justified.

It is well settled that discovery rules are to be liberally construed, and that protection of information about business relations should not be permitted to thwart that objective. But the District Court has substantial discretion in such matters. In Sue v. Chicago Transit Authority, 7 Cir., 279 F.2d 416, at 419, we said: "Whether such a subpoena should be enforced is in the first instance a question for the trial court. Its determination will not be disturbed on appeal unless it clearly appears arbitrary and finds no support in the record." In the same case at page 418, we said with reference to interrogatories: "It was well within the discretion of the court to refuse to require the defendant to answer the interrogatories in question."

A valid cause of action or claim must be based upon something more than conjecture. We cannot say that the trial court abused its discretion in declining to

permit the plaintiff to inquire into these matters. Tiedman v. American Pigment Corporation, 4 Cir., 253 F.2d 803 (1958). The Court's action was not error.

The judgment of the District Court is Affirmed.