John H. DOUGLAS and Jean
Douglas, Appellants,

v.

GLACIER STATE TELEPHONE CO. and
Kenai Peninsula Borough, Appellees.

No. 4306.

Supreme Court of Alaska.

Aug. 1, 1980.

Johnston, Jeffries, Kenai, and James K. Tallman, Anchorage, for appellants.

Michael G. Briggs, Richard Veerman, Ely, Guess & Rudd, Anchorage, for appellee Glacier State Tel. Co.

Andrew R. Sarisky, Borough Attorney, Soldotna, for appellee Kenai Peninsula Borough.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This appeal arises from a class action brought by the Douglases against the Kenai Peninsula Borough, Glacier State Telephone Company, and various municipalities within the Borough over the imposition of local sales taxes on long–distance phone calls charged to phones within the Borough. The issues presented are whether the superior court erred in granting partial summary judgment against the Douglases on their claim that the sales tax was invalid under the commerce clause, whether the superior court erred in subsequently dismissing the action against the Borough and Glacier State under Civil Rule 12(b)(6), and wheth-

er the trial court erred in awarding attorney's fees to Glacier State.

The Kenai Peninsula Borough Sales Tax is a tax of three percent levied on the gross sales price of "any retail sale, on all rents, and on all services made or rendered within the Borough . . . ."[1] "Service" is defined to include "telephone services and repairs."[2] The tax is imposed upon the buyer, with the seller of the service obligated to collect the tax as a "certified tax collector of the Borough."[3] Glacier State, as a seller of telephone services within the Borough, collected the sales tax from its customers pursuant to the ordinance for a period of about ten years prior to June, 1974. Glacier State collected the tax on the total amount it billed its customers for services each month. Thus the tax was assessed on charges to phones located within the Borough for calls made to or from phones located outside the Borough, as well as charges for calls completed entirely within the Borough boundaries.

### I. *Commerce Clause Issues*

▆ The Douglases argue that the application of the sales tax to charges for inter-borough calls within Alaska and interstate calls places an undue burden on commerce in violation of the United States Constitution.[4] With respect to calls completed entirely within Alaska, this argument is misplaced. The commerce clause of the United States Constitution poses no bar to local taxation of purely intrastate transactions which are not components of interstate commerce. *Ozark Pipe Line Corp. v. Monier*, 266 U.S. 555, 45 S.Ct. 184, 69 L.Ed. 439 (1925); *Ratterman v. Western Union Telegraph Co.*, 127 U.S. 411, 424, 8 S.Ct. 1127, 1130, 32 L.Ed. 229, 232 (1888). With regard to interstate phone call charges, we also reject the argument of the Douglases, for the following reasons.

Early United States Supreme Court cases considering the application of a local tax to interstate electronic communications dealt with license taxes imposed directly on the business of telegraph companies. These taxes were held invalid under the commerce clause where they were applied to interstate telegraph messages, whether the tax rate was based on the number of interstate messages handled by the company or the revenue derived from such service. The principle enunciated was that because such messages were themselves elements of interstate commerce, the commerce clause ex-

---

1. Kenai Peninsula Borough Book of Ordinances, Sec. 25.10.05 reads:

 There is levied a consumers' sales tax of three percent on all retail sales, on all rents, and on all services made or rendered within the Borough, measured by the gross sales price of the seller.

2. Kenai Peninsula Borough Book of Ordinances, Sec. 25.10.030(7) reads:

 (7) "Services" includes all services of every manner and description which are performed or furnished for compensation, except services rendered to an employer by an employee, including but not limited to:
 (A) Professional services;
 (B) Services in which a product or sale of property may be involved, including personal property made to order;
 (C) Utilities and utility services not constituting a sale of personal property, including sewer, water, electrical and telephone services and repair;
 (D) The sale of transportation services;
 (E) Services rendered for compensation by any person who furnishes any such services in the course of his business or occupation;

(F) Services wherein labor and materials are used to accomplish a specified result;
(G) And any other services including advertising, maintenance, recreation, amusement and craftsmen services.

3. Kenai Peninsula Borough Book of Ordinances, Sec. 25.10.010 states:

 The obligation of the tax is upon the buyer. The seller shall collect the tax at the time of sale. Collection is enforceable by the seller as a certified tax collector of the Borough: provided, however, that this shall not limit the liability of the buyer to the Borough.

4. Article I, § 8 of the United States Constitution provides:

 The Congress shall have power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States; but all duties, imposts and excises shall be uniform throughout the United States; to borrow money on the credit of the United States; to regulate commerce with foreign nations, and among the several states, and with the Indian tribes; . . .

cluded them from the legislative jurisdiction of any state and forbade direct taxation of a business which consisted of such interstate commerce. *Western Union Telegraph Co. v. Alabama State Board of Assessment*, 132 U.S. 472, 10 S.Ct. 161, 33 L.Ed. 409 (1889); *Western Union Telegraph Co. v. Pennsylvania*, 128 U.S. 39, 9 S.Ct. 6, 32 L.Ed. 345 (1888); *Ratterman v. Western Union Telegraph Co.*, 127 U.S. 411, 8 S.Ct. 1127, 32 L.Ed. 229 (1888).

This doctrine was restated clearly in a later case, *Cooney v. Mountain States Telephone & Telegraph Co.*, 294 U.S. 384, 55 S.Ct. 477, 79 L.Ed. 934 (1935). Montana levied an annual license tax on the telephone company based upon the number of telephones furnished by the company to customers in the state. Since it was shown that a substantial number of the phones was used to make interstate as well as intrastate calls, the Supreme Court held the tax as a whole invalid, stating:

> [A] state cannot tax interstate commerce; it cannot lay a tax upon the business which constitutes such commerce or the privilege of engaging in it. And the fact that a portion of the business is intrastate and therefore taxable does not justify a tax either upon the interstate business or upon the whole business without discrimination. There are "sufficient modes" in which the local business may be taxed without the imposition of a tax "which covers the entire operations."

294 U.S. at 392–93, 55 S.Ct. at 481–82, 79 L.Ed. at 941–42 (citations and footnotes omitted).

*Fisher's Blend Station v. State Tax Commission*, 297 U.S. 650, 56 S.Ct. 608, 80 L.Ed. 956 (1936), also followed the principle forbidding direct taxation of business which consists of interstate commerce. There, the State of Washington imposed an "occupation" tax on radio broadcasting stations operating within the state, measured by the gross revenue a station derived from its entire operations. Since the primary source of revenue for these stations was broadcasting, and since the complaining station showed that its broadcasts reached listeners in other states, the Court, citing *Cooney*, held that the tax created an unconstitutional burden on interstate commerce. 297 U.S. at 656, 56 S.Ct. at 610, 80 L.Ed. at 960.

Three years after the decisions in *Cooney* and *Fisher's Blend Station* were reached, however, the Court announced a more flexible and pragmatic test than the per se prohibition against "direct" taxation of interstate commerce relied upon in the earlier cases. This landmark decision, *Western Livestock v. Bureau of Revenue*, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1938), involved a New Mexico tax imposed upon various publishing businesses in the state, measured by gross receipts from sale of advertising space. The Supreme Court upheld the tax as applied to a business which circulated its magazine both in and out of the state, and which also received revenue from out–of–state advertisers.

In reaching its decision, the Court emphasized that the work done to perform the advertising contracts was completed within New Mexico's boundaries, constituting a local taxable activity distinct from interstate circulation of the magazine. 303 U.S. at 258, 58 S.Ct. at 549, 82 L.Ed. at 829. However, the Court also premised its holding on a "cumulative burden" or "multiple taxation" theory. Under this doctrine the Court concluded that a tax applied equally to interstate and local business did not discriminate unconstitutionally against interstate commerce unless another state could impose an additional tax on the same business activity. The Court felt that the challenged New Mexico tax was justified, as long as no potential for multiple taxation by other states was present, as a fair assessment on interstate commerce for the support of local government services which benefit all business:

> [W]e think the tax assailed here finds support in reason, and in the practical needs of a taxing system which, under constitutional limitations, must accommodate itself to the double demand that interstate business shall pay its way, and that at the same time it shall not be burdened with cumulative exactions

which are not similarly laid on local business.

303 U.S. at 258, 58 S.Ct. at 550, 82 L.Ed. at 829. The Court referred to prior cases wherein taxes measured by revenue from interstate commerce had been upheld in circumstances where the amounts assessed were "fairly apportioned" to that part of the commerce carried on within the taxing state,[5] and struck down when not so apportioned.[6] 303 U.S. at 255–256, 58 S.Ct. at 548–549, 82 L.Ed. at 827–28. The Court further articulated the "cumulative burden" principle in stating the reason for invalidating unapportioned taxes on the gross receipts of interstate businesses:

> [These taxes] have placed on the commerce burdens of such a nature as to be capable, in point of substance, of being imposed with equal right by every state which the commerce touches, merely because interstate commerce is being done, so that without the protection of the commerce clause it would bear *cumulative burdens* not imposed on local commerce.

303 U.S. at 255–56, 58 S.Ct. at 549, 82 L.Ed. at 828 (emphasis added) (citations omitted). Recognizing that the gross receipts tax under consideration was not limited to revenues attributable to in–state circulation of the publisher's magazines, the Court further observed:

> So far as the advertising rates reflect a value attributable to the maintenance of a circulation of the magazine interstate, we think the burden on the interstate business is *too remote* and *too attenuated* to call for a rigidly logical application of the doctrine that gross receipts from interstate commerce may not be made a measure of a tax. Experience has taught that the opposing demands that the *commerce shall bear its fair share of local taxation*, and that it shall not, on the other hand, be subjected to *multiple tax burdens* merely because it is interstate commerce, are not capable of reconciliation by resort to the syllogism. *Practical rather than logical distinctions must be sought.*.

303 U.S. at 259, 58 S.Ct. at 550, 82 L.Ed. at 830 (emphasis added) (citations omitted).

The Supreme Court in *Western Livestock* went on, following this practical approach, to distinguish the New Mexico tax on advertising revenues from a direct tax on receipts from out–of–state subscriptions of the publisher's magazines, noting that a tax on such subscription sales could be repeated by other states where the magazines were sold, while the advertising services performed within the publisher's state presumably would not be within the taxing jurisdiction of other states. 303 U.S. at 260, 58 S.Ct. at 549, 82 L.Ed. at 830. The Court also distinguished the tax in *Western Livestock* from business taxes based on gross receipts derived from interstate communications under the "cumulative burden" test, referring to the *Fisher's Blend Station* case:

> In this and other ways the case differs from *Fisher's Blend Station v. State Tax Commission*, 297 U.S. 650, 56 S.Ct. 608, 80 L.Ed. 956, supra, on which appellants rely. There the exaction was a privilege tax laid upon the occupation of broadcasting, which the court held was itself interstate communication, comparable to that carried on by the telegraph and the telephone, and was measured by the gross receipts derived from that commerce. If broadcasting could be taxed, so also could reception. In that event a cumulative tax burden would be imposed on interstate communication such as might ensue if gross receipts from interstate transportation could be taxed.

303 U.S. at 260–61, 58 S.Ct. at 551, 82 L.Ed. at 830–31 (citation omitted).

---

5. *Cudahy Packing Co. v. Minnesota*, 246 U.S. 450, 38 S.Ct. 373, 62 L.Ed. 827 (1918); *United States Express Co. v. Minnesota*, 223 U.S. 335, 32 S.Ct. 211, 56 L.Ed. 459 (1912); *Wisconsin & M. Ry. Co. v. Powers*, 191 U.S. 379, 24 S.Ct. 107, 48 L.Ed. 229 (1903); *Maine v. Grand Trunk Ry. Co.*, 142 U.S. 217, 12 S.Ct. 163, 35 L.Ed. 994 (1891).

6. *Meyer v. Wells, Fargo & Co.*, 223 U.S. 298, 32 S.Ct. 218, 56 L.Ed. 445 (1912); *Galveston, H. & S. A. Ry. Co. v. Texas*, 210 U.S. 217, 28 S.Ct. 638, 52 L.Ed. 1031 (1908); *Fargo v. Michigan*, 121 U.S. 230, 7 S.Ct. 857, 30 L.Ed. 888 (1887).

Scores of cases treating state and local taxation under the commerce clause have followed *Western Livestock*. The Supreme Court of the United States has conceded on more than one occasion that it was beyond its abilities to reconcile this body of decisions into a consistent analytic framework.[7] Furthermore, none of these cases has dealt directly with the tax which the Douglases challenge, a general sales tax applied to consumers of interstate telephone services, rather than the telephone company.[8] However, the *Western Livestock* "cumulative burden" doctrine remains viable, and its refinement over the years indicates that such a sales tax is constitutional under the facts of this case, contrary to what *Fisher's Blend Station* and previous cases dealing with taxes on interstate communications businesses might indicate.

Of particular interest are those decisions involving taxes similar to the one at bar—general taxes applied to the sale, use, or manufacture of goods made in one state but delivered to a user in another state, and imposed on the consumer rather than directly on the privilege of the seller doing business in the state. Such taxes do not discriminate against interstate commerce on their face where an equal tax rate is applied, for instance, to all sales within the state, regardless of the origin of the goods sold. They nevertheless pose a danger of multiple taxation if sufficient nexus exists in more than one state to tax the manufacture, sale, or consumption of the same item. Yet the Supreme Court has not viewed apportionment of the tax rate to the intrastate aspect of the taxed event as the solution for avoiding this risk. Instead the Court has tended to validate such taxes when imposed by the state where goods are sold and invalidate them when imposed by the state from which the goods are sent, at least where no offsetting credit for tax paid in another state is a part of the scheme.[9] This pragmatic choice has its basis in the fact that if only the state of destination is prohibited from taxing goods shipped interstate, then the tax rate it applies to locally produced goods could easily be lower than that applied by another state to goods shipped into the state, thus placing the foreign goods at a competitive disadvantage in the state where they are marketed. If only the state of origin is forbidden to tax the sale of goods destined for consumption in other states, then the equal application of a sales tax to all goods consumed in the state of destination poses no such threat.[10] Thus,

7. *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 457–58, 79 S.Ct. 357, 361–362, 3 L.Ed.2d 421, 426–27 (1959); *Miller Bros. Co.v. Maryland*, 347 U.S. 340, 344, 74 S.Ct. 535, 538, 98 L.Ed. 744, 748, *reh. denied*, 347 U.S. 964, 74 S.Ct. 708, 98 L.Ed. 1106 (1954); *Freeman v. Hewit*, 329 U.S. 249, 252, 67 S.Ct. 274, 276, 91 L.Ed. 265, 271 (1946), *reh. denied*, 329 U.S. 832, 67 S.Ct. 497, 91 L.Ed. 705 (1947).

8. The case of *McGoldrick v. Berwind–White Coal Mining Co.*, 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940), upheld a New York City sales tax which, although attacked by a Pennsylvania mining concern as applied to sales of coal, also applied to consumer purchases of telephone services. 309 U.S. at 42, 60 S.Ct. at 390, 84 L.Ed. at 568. The opinion notes the "cumulative burden" problem, but concludes that it does not require condemnation of the sales tax:

> Here the tax is conditioned upon a local activity delivery of goods within the state upon their purchase for consumption. It is an activity which, apart from its effect on the commerce, is subject to the state taxing power. The effect of the tax, even though measured by the sales price, as has been shown, neither discriminates against nor obstructs interstate commerce more than numerous other state taxes which have repeatedly been sustained as involving no prohibited regulation of interstate commerce.

309 U.S. at 58, 60 S.Ct. at 398–99, 84 L.Ed. at 577.

9. *See International Harvester Co. v. Department of Treasury*, 322 U.S. 340, 358–62, 64 S.Ct. 1019, 1035–1037, 88 L.Ed. 1313, 1323–26 (Rutledge, J., concurring and dissenting), *reh. denied*, 322 U.S. 772, 64 S.Ct. 1281, 88 L.Ed. 1597 (1944); Hellerstein, *State Taxation of Interstate Business and the Supreme Court, 1974 Term: Standard Pressed Steel and Colonial Pipeline*, 62 Va.L.Rev. 149, 171–72 (1976).

10. *See Freeman v. Hewit*, 329 U.S. 249, 280, n.41, 67 S.Ct. 274, 291 n.41, 91 L.Ed. 265, 287 n.41 (1946) (Rutledge, J., concurring), *reh. denied*, 329 U.S. 832, 67 S.Ct. 497, 91 L.Ed. 705 (1947); *International Harvester Co. v. Department of Treasury*, 322 U.S. 340, 361, 64 S.Ct. 1019, 1036, 88 L.Ed. 1313, 1325 (Rutledge, J.,

the United States Supreme Court has not precluded itself from preferring one state over another in permitting taxation of transactions affecting interstate commerce, in order to obviate risks of multiple taxation.

■ Recent cases have also suggested more leniency by the United States Supreme Court regarding taxes imposed directly on the "business" of engaging in interstate commerce, where those taxes appear to be nondiscriminatory and fairly apportioned to services provided to an out-of-state seller by the taxing entity. *See National Geographic Society v. California Equalization Board*, 430 U.S. 551, 558, 97 S.Ct. 1386, 1391, 51 L.Ed.2d 631, 638 (1977); *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 288–89, 97 S.Ct. 1076, 1083–1084, 51 L.Ed.2d 326, 337, *reh. denied*, 430 U.S. 976, 97 S.Ct. 1669, 52 L.Ed.2d 371 (1977). Thus, the per se rule against "direct" interference with interstate commerce followed in *Fisher's Blend Station* and the earlier telegraph and telephone company cases may be regarded as no longer good law.[11]

Finally, of central importance to this case are other United States Supreme Court opinions which suggest that the party alleging an undue burden on interstate commerce from local taxation must show a tangible likelihood that multiple taxation will result if the tax is upheld. The Supreme Court has not specified the substantiality of risk which must be demonstrated, but it has indicated that a bare allegation that the risk exists, absent a showing that cumulative taxation from other states is at least possible from a practical and legal standpoint, is insufficient.[12]

■ Turning now to the tax challenged by the Douglases, we first observe that the Kenai Peninsula Borough Sales Tax does not on its face discriminate against interstate commerce, since an equal rate is applied to all sales, proportional to their retail value. The tax burden, though measured by the price of sending telephone messages, does not fall directly on the phone company but on the consumer of the service.[13]

concurring and dissenting), *reh. denied*, 322 U.S. 772, 64 S.Ct. 1281, 88 L.Ed. 1597 (1944).

11. In *Complete Auto Transit, Inc.*, 430 U.S. at 288–89, 97 S.Ct. at 1084, 51 L.Ed.2d at 337, the Court stated:

> [W]e now reject the rule . . . that a state tax on the "privilege of doing business" is per se unconstitutional when it is applied to interstate commerce . . . ..

12. *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959), upheld a state income tax levied on that portion of a corporation's net income earned from activities within the state, including those in furtherance of interstate commerce, where the fairness of the apportionment scheme was not challenged by the corporation. The Court stated:

> There is nothing to show that multiple taxation is present. We cannot deal in abstractions. In this type of case the taxpayers must show that the formula places a burden upon interstate commerce in a constitutional sense. This they have failed to do.

358 U.S. at 463, 79 S.Ct. at 365, 3 L.Ed.2d at 430. This rule was subsequently followed in *General Motors Corp. v. Washington*, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964). In *Evco v. Jones*, 409 U.S. 91, 94, 93 S.Ct. 349, 351, 34 L.Ed.2d 325, 329 (1972), the Court spoke of the "risk of a double tax burden,"

rather than a showing of any actual present burden. In *Standard Pressed Steel v. Department of Revenue*, 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975), the Court stated:

> We noted in General Motors that the vice in a tax on gross receipts of a corporation doing an interstate business is the *risk* of multiple taxation; but that the *burden is on the taxpayer to demonstrate it* . . . .. The corporation made no such showing there. Nor is any effort made to establish it here.

419 U.S. at 563, 95 S.Ct. at 709, 42 L.Ed.2d at 723 (emphasis added). In that case, the corporate appellant conceded that it had not yet been subjected to a multiple tax burden due to a tax on its gross receipts from sales of goods coming into the taxing state, but alleged a risk of such from other states in the future levying a similar unapportioned tax on the same goods. The state responded that established case law precluded states other than the state of destination from imposing such a tax, and thus there was no risk of a multiple burden. The Court, although not explicitly addressing the issue, apparently adopted the state's position *sub silentio*. *See* Hellerstein, *supra* note 9, at 175–76 n.133.

13. This case can be contrasted on this point with *Cooney v. Mountain States Telephone & Telegraph Co.*, 294 U.S. 384, 55 S.Ct. 477, 79 L.Ed. 934 (1935), where the phone company

Therefore, under *Western Livestock* and its progeny, the primary test of whether the tax is valid as applied to interstate phone calls is whether it imposes a risk of multiple taxation that creates a cumulative burden on interstate phone service, out of proportion to the local government services from which that activity benefits.

The Douglases make the bare assertion that a risk of multiple taxation such as that on broadcasting in *Fisher's Blend Station*, and recognized in *Western Livestock*, exists here because receipt of a call charged to a phone in the Borough could be taxed by another state to which the call is made. We disagree. The calls taxed by the Borough ordinance are only those charged to phones located within the Borough. Even if sufficient nexus to legally tax these calls in another state exists, the impracticality of doing so, in that the phone in another state is never billed for such calls, makes it extremely unlikely that any state or local entity would attempt to enact such a tax. The Douglases have cited no instance of any such attempt. They have not distinguished the analogous cases where sales or

use taxes upon consumers in the state where interstate goods compete with local goods (here the location where both long–distance calls and local calls are billed) have been upheld by the United States Supreme Court.[14] The Douglases' argument fails to recognize the discredit to the *Fisher's Blend Station* holding implicit in the modern cases concerning burden of proof under the "cumulative burden" test, for the practical likelihood of taxing the receipt of broadcasting messages must be compared with that of a tax on the receipt of phone calls billed to a phone in another state.[15] In sum, we cannot agree that *Fisher's Blend Station* and preceding cases concerning telephone and telegraph communications[16] are convincing precedent in light of more recent United States Supreme Court decisions and the unique facts of this case. We find that the Douglases have failed to meet their burden of showing that a palpable risk of multiple taxation, constituting a burden on interstate phone communications beyond its fair share of supporting local services, will result from validating this tax.[17]

was prohibited in the tax law from passing along the tax to consumers in the form of increased rates. 294 U.S. at 385 n.1, 55 S.Ct. at 478 n.1, 79 L.Ed. at 937 n.1. The Borough ordinance on the other hand even provides the telephone company with a commission to cover its cost of collecting the tax from its customers. Kenai Peninsula Borough Book of Ordinances, Sec. 25.10.015(3). As stated in *General Trading Co. v. State Tax Comm'n*, 322 U.S. 335, 338, 64 S.Ct. 1028, 1030, 88 L.Ed. 1309, 1312 (1944):

The exaction is made against the ultimate consumer–the [state] resident who is paying taxes to support his own state government. To make the distributor the tax collector for the State is a familiar and sanctioned device. We do not wish to overemphasize the distinction between taxes imposed directly upon consumers of items of interstate commerce and taxes assessed against those engaged in the business of providing those items, however, since a discriminatory tax on either can place interstate commerce at a disadvantage to local commerce.

14. *See* note 9 *supra*.

15. *See* note 12 *supra*.

16. *See Cooney v. Mountain States Telephone & Telegraph Co.*, 294 U.S. 384, 55 S.Ct. 477, 79 L.Ed. 934 (1935); *Western Union Telegraph Co.*

*v. Alabama State Bd. of Assessment*, 132 U.S. 472, 10 S.Ct. 161, 33 L.Ed. 409 (1889); *Ratterman v. Western Union Telegraph Co.*, 127 U.S. 411, 8 S.Ct. 1127, 32 L.Ed. 229 (1888); *Western Union.Telegraph Co. v. Pennsylvania*, 128 U.S. 39, 9 S.Ct. 6, 32 L.Ed. 345 (1888).

17. The *Western Livestock* opinion, in distinguishing the *Fisher's Blend Station* case, noted that a license tax could be imposed on the use of radio receiving apparatus. 303 U.S. at 261 n.2, 58 S.Ct. at 551 n.2, 82 L.Ed. at 831 n.2. Likewise such a tax could possibly be imposed on the purchase or possession of a telephone. But such a tax would not impose the cumulative burden about which decisions since *Western Livestock* have been concerned: a same or similar tax imposed on the *same interstate transaction* by one or more states. *See Coverdale v. Arkansas–Louisiana Pipe Line Co.*, 303 U.S. 604, 613, 58 S.Ct. 736, 740, 82 L.Ed. 1043, 1050 (1938). One commentator has pointed out as well that the tax in *Western Livestock* was upheld despite the imposition by over half of the states in the United States of a sales tax applicable to interstate sales of the magazine in question. Note, *Gross Receipts Taxes on Interstate Transportation and Communication*, 57 Harv.L.Rev. 40, 73 (1943).

We thus note that taxes based on charges to phones located within a state could be enacted

## II. *Equal Protection Claims Against The Kenai Peninsula Borough*

In their complaint, the Douglases also alleged that the Borough violated their equal protection rights under the Alaska and United States Constitutions, by failing to collect the Borough tax from customers of General Telephone Company in Seward. The Douglases assert on appeal that the superior court erred in granting a Civil Rule 12(b)(6) motion dismissing their complaint on this issue for failure to state a claim against the Borough for which relief can be granted.[18] We hold that the superior court did err in granting the motion.

▮ The superior court stated as its reason for granting the motion to dismiss that the Douglases had no claim for relief against the Borough for failing to collect taxes from customers of General Telephone Company. We disagree. Other jurisdictions have granted standing, to citizens who have paid validly assessed taxes, to sue government entities for relief in the nature of mandamus and force uniform collection of the tax from citizens who have not been assessed at all or assessed at lower rates. *Bussie v. Long*, 286 So.2d 689 (La.App.1973), *cert. denied*, 288 So.2d 354 (La.1974); *State ex rel. Miller v. Price*, 3 Ohio St.2d 177, 209 N.E.2d 578 (1965). We agree with these decisions, observing that the higher potential tax burden which the Douglases suffer when the tax they pay is not collected from all taxpayers from whom it is legally due is sufficient interest to justify their standing to seek mandamus.[19] The fact that General Telephone Company has not been joined in the action, and that the relief sought involves assessing that company for taxes it failed to collect in the past, is not fatal to the claim. The Borough tax ordinance establishes a clear continuing legal liability upon a seller of services for taxes it failed to collect for the Borough.[20] The Borough has not demonstrated that enforcement of the ordinance is other than a ministerial duty of the Borough auditor normally subject to a writ of mandamus, nor is there any indication that General Telephone Company

in all states without taxing the same phone call twice in any instance, and to the extent that the charges for long–distance calls reflect the value of services rendered outside the Borough, we consider that burden on interstate commerce to be too attenuated to invalidate a practical scheme of local taxation not otherwise shown to discriminate against interstate transactions. *See Western Livestock v. Bureau of Revenue*, 303 U.S. at 259, 58 S.Ct. at 550, 82 L.Ed. at 830.

**18.** Alaska R.Civ.P. 12(b) reads in pertinent part:

[T]he following defenses may at the option of the pleader be made by motion:

(6) failure to state a claim upon which relief can be granted,

**19.** In *Bussie v. Long*, 286 So.2d at 696, the court said:

Our own jurisprudence also recognizes that the requirement of a peculiar and special interest in the performance of an official duty exists and is satisfied in those instances wherein it is charged that an unlawful performance of duty, or refusal to perform, by a public official, discriminates against a citizen–taxpayer by either increasing his tax burden or otherwise injuriously affecting the taxpayer or his property.

The Douglases' complaint did not request relief in the form of mandamus, but for a refund of wrongfully assessed taxes and for "general relief." The fact that the relief requested is not that to which the Douglases may be ultimately entitled is of no consequence, however, so long as the complaint states a claim upon which *some* relief may be granted, and the complaint states the relief to which the pleader believes himself entitled. *Miller v. Johnson*, 370 P.2d 171, 172 (Alaska 1962). Alaska R.Civ.P. 54(c) provides in pertinent part:

[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.

**20.** Kenai Peninsula Borough Book of Ordinances, Sec. 25.10.065(1) provides:

A seller shall determine in the first instance whether a retail sale is exempt under this Chapter. However, if a seller incorrectly determines that a sale is exempt, then the seller is liable to the Borough for the tax, just as if he had collected it.

Sec. 25.10.086 further states:

The tax, penalty and interest imposed by this chapter shall constitute a lien in favor of the Borough upon all the seller's property within the Borough. The lien arises upon delinquency and continues until the liability for the amount is satisfied or the property is sold at foreclosure sale.

will be prevented by this decision from asserting any defenses it may have to enforcement of the tax through normal administrative and judicial channels.[21]

The Douglases and the Borough also both moved for summary judgment on the equal protection issue, concurrent with the motion to dismiss, and both submitted affidavits to support their respective positions. From the record it is unclear whether the superior court excluded these materials from consideration in granting the motion to dismiss the pleading, or alternatively treated the Rule 12(b)(6) motion as a summary judgment motion, as required by Civil Rule 12(b).[22] Both parties have taken advantage of their opportunity to submit evidence in the record to support their motions for summary judgment, however, so there is little to be gained by remanding the issue to the superior court for determination. Therefore, in the interest of judicial efficiency, we will also review the superior court's ruling as an entry of summary judgment. This review is in accord with our recent decision in *Martin v. Mears*, 602 P.2d 421 (Alaska 1979) and other cases interpreting

the identical Federal Civil Rule 12(b).[23] We hold that neither the Douglases nor the Borough were entitled to summary judgment on the question of whether unconstitutional discrimination occurred in collection of the tax.

■ "To avoid summary judgment once the moving party meets its burden, the non-moving party must produce competent evidence showing that there are issues of material fact to be tried. The respondent must set forth specific facts showing that it could produce admissible evidence reasonably tending to dispute the movant's evidence or establish an affirmative defense." *Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Service Co.*, 584 P.2d 15, 24 (Alaska 1978) (citations omitted). In order to avoid summary judgment on the issue of whether a violation of equal protection of the law has occurred under either the Alaska or United States Constitution, the Douglases must produce evidence tending to show a dispute exists over whether unequal enforcement of the tax has taken place, and whether the selective enforcement was part of an arbitrary or intentional plan to discriminate:

**21.** *See State ex rel. Miller v. Price*, 3 Ohio St.2d 177, 209 N.E.2d 578, 580 (1965).

**22.** Alaska R.Civ.P. 12(b) states in part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

**23.** *See Romero v. International Terminal Operating Co.*, 358 U.S. 354, 357 n.4, 79 S.Ct. 468, 472 n.4, 3 L.Ed.2d 368, 374 n.4, *reh. denied*, 359 U.S. 962, 79 S.Ct. 795, 3 L.Ed.2d 769 (1959); *S & S Logging Co. v. Barker*, 366 F.2d 617, 623 (9th Cir. 1966); 5 C. Wright & A. Miller, Federal Practice and Procedure, Civ. § 1366, at 680 n.26 (1969 & Supp. 1979). In *Martin v. Mears*, 602 P.2d 421 (Alaska 1979), we held that failure to affirmatively and expressly exclude material outside the pleadings submitted with a Rule 12(b)(6) motion to dismiss is error, unless the requirements of Rule 12(b) for treating the motion as one for summary judgment as provided

in Civil Rule 12(b) are met. We recognized three options for review of this type of error:

1) remand for proper consideration as either a Rule 12(b)(6) dismissal motion or a Rule 56 motion for summary judgment with the attendant requirements of that rule;

2) review the decision as a Rule 12(b)(6) motion for dismissal, treating the decision as if the motion had been granted after exclusion of the outside material as required;

3) review the decision as an entry of summary judgment, treating the decision as if summary judgment had been granted after consideration of the extraneous material submitted and the other requirements of Rule 12(b) for conversion to a motion for summary judgment had been met.

*Martin v. Mears*, 602 P.2d at 427.

Rule 12(b) requires that if the Rule 12(b)(6) motion is to be converted to one for summary judgment, the parties must be given a "reasonable opportunity" to submit material in support of their motion as allowed under Civil Rule 56. Since both parties also moved for summary judgment on the issue in question under the concurrent Rule 12(b)(6) motion here, no legitimate interest would be served by remanding to the superior court and giving each party an additional opportunity to submit more evidence in support of their respective motions.

[A]n individual who claims that selective enforcement has deprived him or her of equal protection under the state constitution must show '*a deliberate and intentional plan to discriminate*,' based upon some unjustifiable or arbitrary classification. *There is a similar requirement for proof of a violation of equal protection rights under the federal constitution.* See *Mackay Telegraph and Cable v. Little Rock*, 250 U.S. 94, 39 S.Ct. 428, 63 L.Ed. 863 (1919).

*State v. Reefer King Co.*, 559 P.2d 56, 65 (Alaska 1976), *modified on other grounds*, 562 P.2d 702 (Alaska 1977) (emphasis added). Mere errors of judgment by officials do not amount to unconstitutional discrimination, and the good faith of such officers will be presumed. *Sunday Lake Iron Co. v. Wakefield*, 247 U.S. 350, 353, 38 S.Ct. 495, 62 L.Ed. 1154, 1156 (1918).

■ Here, the Douglases have presented competent evidence tending to show that the tax has been applied unequally on a substantial scale.[24] Evidence in the form of various affidavits, answers to interrogatories, and correspondence was also presented showing that Borough officials permitted Glacier State to continue to collect tax on interborough and interstate calls for over a year after the Borough attorney sent them a letter informing them that the tax did not apply to such calls. The evidence shows that the opinion expressed in the letter given to Glacier State was contrary to formal Borough regulations in effect at the time requiring the tax to be collected on long-distance calls. This evidence places in question the bare denials by Borough representatives that responsible officials had any knowledge that the tax was being applied in a discriminatory manner. While the Douglases have by no means shown that they are likely to prevail in establishing that an intentional policy of discrimination was being followed by the Borough, they have presented sufficient competent evidence to place the factual question of the knowledge and intent of Borough officials in dispute.[25]

### III. *Dismissal of Claim Against Glacier State*

■ The superior court also granted a Rule 12(b)(6) motion to dismiss the action against Glacier State, for failure to state a claim upon which relief can be granted. If we were to review the ruling as a proper Rule 12(b)(6) dismissal, considering only the pleadings themselves, we might agree with the Douglases that the superior court erred in granting the motion. The Douglas complaint states:

---

**24.** The Douglases submitted an affidavit from the Alaska area manager of General Telephone Company's parent corporation stating that the company had not at any time collected tax from their customers *on calls other than those* calls completed within the Borough. The Borough in reply submitted an affidavit from the Borough auditor stating in essence that, despite an audit of the company in 1976, Borough officials were not aware of any "misapplication" of the tax by General Telephone Company. The Borough also disputed the adequacy of the Douglases' affidavit, on the following grounds:

 1) The area manager did not have personal knowledge of the manner in which the Borough tax was imposed, since he is not a financial officer of General Telephone and because customer billings and sales tax returns were calculated and mailed from General Telephone's Washington office.

 2) *Obvious changes were made to the affidavit below the notarization, rendering the meaning of the language preceding the notarization unclear.*

The allegations have little merit. Although typed alterations to the original wording of the affidavit have been made, the unaltered portion clearly states:

 It is not our policy, now or never has been, since *1956*, the approximate date our Company commenced serving the Seward area, to charge or collect such sales taxes on long distance calls made and completed to or from telephones, one of which was located outside the Borough. In any reporting or paying of sales tax, we have never collected any such tax on long distance calls, as above set forth, or remitted the same to the Kenai Peninsula Borough.

The affiant's statement concerns the official billing policy of General Telephone in the Seward area, a matter of which his management position suggests he has every reason to possess personal knowledge.

**25.** We have stated previously that where intent is the main issue, summary judgment should be used sparingly. *Harris v. Alaska Title Guar. Co.*, 510 P.2d 501, 503 (Alaska 1973).

Plaintiff is informed and believes that [Glacier State] may have collected certain money as sales tax which should have been paid to the Borough but . . . through either inadvertence or improper accounting, not all money collected for sales taxes was remitted which should have been collected and spent for school purposes.

As we have discussed with regard to the equal protection claim against the Borough, Glacier State is liable to the Borough under the terms of the tax ordinance for failing to collect or remit any tax money due on sales of services it has rendered. It was therefore not improper for the Douglases to join Glacier State as a defendant, since relief would ultimately be granted against them should the claim prevail.

The record shows, however, that Glacier State submitted evidentiary material outside the pleadings along with this motion to dismiss. Thus, under the rationale enunciated in *Martin v. Mears*, 602 P.2d 421 (Alaska 1979), discussed above, we have decided to review the grant of the motion as an entry of summary judgment against the Douglases on the question of whether Glacier State has failed to properly collect or remit all tax money properly due under the ordinance. We hold that the superior court was correct in granting the motion, for the reasons discussed below.

Central to our decision is whether the Douglases were given "reasonable opportunity" to present evidentiary material pertinent to a summary judgment motion, as required by Civil Rule 12(b).[26] The Douglases objected to the inclusion of the evidence submitted by Glacier State along with its motion, so it may be assumed that they expected the motion to be treated as a proper Rule 12(b)(6) motion. At the time the motion was heard, however, it appears from the record that the Douglases had marshalled no evidence tending to show that Glacier State had failed to collect or remit any taxes due to the Borough, despite the passage of over a year since it became clear that this would be the only claim for relief possible against Glacier State.[27] Therefore it is appropriate to consider whether the Douglases could have availed themselves of the opportunity to present evidence to oppose Glacier State's motion if the superior court had expressly invited them to do so.[28]

Central to this question are various discovery motions denied to the Douglases which they allege impaired their ability to obtain evidence concerning the collection of taxes by Glacier State. One of these motions, an application to depose the Borough auditor, was filed one and a half months after the motion to dismiss Glacier State was granted. We therefore cannot say the superior court abused its discretion in denying it. Another motion was to compel production of a contractual document describing the division of long-distance call revenues between Glacier State and R.C.A.–Alascom, the long–distance line carrier. Appellants contend this document was relevant to showing that Glacier State should have collected taxes from R.C.A. for local switching and billing services it "sells" to R.C.A. as its part of long–distance services to phone customers. Regardless of the mechanics of the division of revenue between Glacier State and R.C.A., we find no merit whatsoever in the contention that a tax defined in the Borough ordinance as a "consumer sales tax," validly assessed under the terms of the ordinance against the customers of Glacier State based on the gross charge for the service rendered to them,

---

**26.** *See* notes 22 and 23 *supra*.

**27.** The superior court dismissed plaintiff's cause of action alleging an impermissible burden on interstate commerce from the tax on October 19, 1976. The motion to dismiss the remaining claim against Glacier State was filed on September 1, 1977, argued on December 13, 1977, and granted on March 22, 1978.

**28.** In several of the federal circuit courts, the "reasonable opportunity" language in the identical federal analog to Alaska R.Civ.P. 12(b) has been interpreted to require the trial court to inform the parties that it is treating the 12(b)(6) motion as one for summary judgment. *See, e. g., Dale v. Hahn*, 440 F.2d 633, 638 (2d Cir. 1971).

should also be applied against one of the providers of that service.[29] Discovery rules are to be liberally construed.[30] Normally, protection of information about business relations should not be permitted to thwart that objective.[31] But the superior court has discretion whether or not to order discovery, and discovery related to an insubstantial claim may be refused.[32] Thus we cannot say the superior court abused its discretion in denying discovery of the document.

 Another motion concerned allegedly inadequate answers to interrogatories submitted to Glacier State by the Douglases. Most of the interrogatories concerned the division of long–distance call revenues between Glacier State and R.C.A., and thus suffer the same defect discussed with respect to the contractual agreement above. One interrogatory asked for the total sum collected by Glacier State and paid over to the Borough for sales taxes on long–distance calls from customers in the Borough. The Douglases desired this information primarily for the purpose of determining how much refund should be due if the tax was determined to be invalid as applied to interborough and interstate calls, a relevant purpose. The information could also be relevant to determining if Glacier State properly remitted all tax monies to the Borough. However, to provide the exact information requested would have involved great expense in recompilation of records by Glacier State, since the company compiled the sales tax on the total monthly billings to customers, which included local as well as long–distance services. It is the total amount of tax collected and remitted which is directly relevant to the Douglases' claim, and which is much more easily obtained. Thus we conclude that denial of discovery was within the superior court's discretion and that no abuse of discretion occurred in this instance.

 The superior court also denied a request for inspection and copying of all of Glacier State's records pertaining to its collection of sales taxes. These documents are relevant to ascertaining whether Glacier State has properly remitted all sales taxes it has collected from its customers on behalf of the Borough. But the record shows that the Douglases, prior to the granting of the motion to dismiss, had no basis whatsoever beyond their own bare suspicions that Glacier State had failed to remit any tax money, other than the defective claim of failure to collect taxes from R.C.A.[33] When a claim is grounded upon nothing more than conjecture, a trial court can within its discretion deny the kind of wide–ranging, cumbersome discovery sought in the Douglases' motion. *Spier v. Home Insurance Co.*, 404 F.2d 896 (7th Cir. 1968). The superior court's denial of discovery seems especially appropriate here, where the motion followed a period of months during which the Douglases failed to depose any officials of the Borough or Glacier State on the subject

29. *See* notes 1 and 2 *supra*.

30. *Van Alen v. Anchorage Ski Club, Inc.*, 536 P.2d 784, 787 (Alaska 1975). Alaska R.Civ.P. 26(b)(1) states:

(b) *Scope of Discovery.* Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) *In General.* Parties may obtain discovery regarding any matter, not privileged which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

31. *See Spier v. Home Ins. Co.*, 404 F.2d 896, 899 (7th Cir. 1968) regarding the analogous federal discovery rules.

32. *See id.* at 899–900; *Apel v. Murphy*, 70 F.R.D. 651 (D.R.I.1976); 4 Moore's Federal Practice ¶ 26.56[1], at 26–125 (1979).

33. This fact is especially apparent in the answers to interrogatories submitted to the Douglases by Glacier State, and attached to Glacier State's 12(b)(6) motion to dismiss.

or otherwise seek information which would develop a factual basis for their claim.

██ It thus appears the Douglases would have failed to meet their burden of demonstrating a genuine issue of fact had they been given an express opportunity to do so at the time the 12(b)(6) motion was granted to Glacier State, and that their ability to do so was not inappropriately impaired by limitations on discovery efforts. Treating the 12(b)(6) motion as one for summary judgment, we conclude the superior court did not err in granting the motion.

### IV. Attorney's Fees Awarded to Glacier State

██ The last contention by the Douglases in this appeal is that the superior court erred in assessing attorney's fees against them in favor of Glacier State. With this argument we agree. It is an abuse of discretion to award attorney's fees against a losing party who has in good faith litigated a question of genuine public interest. Gilbert v. State, 526 P.2d 1131, 1136 (Alaska 1974). The Douglases in this class action presented at least one substantial claim, to which Glacier State was properly joined as a party, that is of genuine public importance—the constitutionality of applying a local sales tax to long–distance phone calls. Although the superior court criticized the performance of counsel representing the Douglases, the good faith of the Douglases and their attorneys in conducting the suit or in joining Glacier State was not

brought into question.[34] Assessing attorney's fees against the Douglases in this case would deter other legitimate suits to protect citizens' rights against abusive taxation. No one besides those private citizens who are improperly assessed taxes can be expected to protect these rights in court.[35]

The superior court's grant of partial summary judgment against the Douglases on the issue of whether the Borough tax has been validly applied to interborough and interstate phone calls under the commerce clause is Affirmed. The dismissal of the Douglases' complaint against Glacier State is also Affirmed. The dismissal of the Douglases' complaint against the Borough is Reversed and the matter remanded for further proceedings in accordance with this opinion.

---

**34.** The superior court offered the following explanation for the award of attorney's fees to Glacier State:

The plaintiffs failed to research the law on the questions of taxation of interstate commerce, levy of taxes and failure by a municipal corporation to collect some taxes levied before filing this case which resulted in the Glacier State Telephone Company and other defendants having to expend great effort in their defense. The customers and stockholders of Glacier State Telephone Company should not have to bear the cost of the plaintiffs' actions.

The following exchange between the Douglases' counsel and the trial judge also took place:

MR. JEFFRIES: . . . But I thought Your Honor felt that it meant we were not in good

faith. If we can get a finding, Your Honor, that it was—a not—if there's definitely a finding that you don't say we were in bad faith in our conduct.

THE COURT: I haven't talked about that at all. And I don't—it's not before the court whether you were in good faith or bad faith. [Hearing on clarification of rulings, Vol. I at 21]

**35.** In Anchorage v. McCabe, 568 P.2d 986, 991 (Alaska 1977), we cited three factors as indicia of public interest litigation:

(1) the effectuation of strong public policies;
(2) the fact that numerous people received benefits from plaintiffs' litigation success;
(3) the fact that only a private party could have been expected to bring this action.